### LANDSBOROUGH v. UNITED STATES.

#### No. 10565.

Circuit Court of Appeals, Sixth Circuit.

June 1, 1948.

Wayne E. Miller, of Cleveland, Ohio (Wayne E. Miller, of Cleveland, Ohio, of counsel; and Griswold, Leeper, Miller & Corry, of Cleveland, Ohio, on the brief), for appellant.

Frank E. Steel, of Cleveland, Ohio (Don C. Miller, and Frank E. Steel, both of Cleveland, Ohio, on the brief), for appellee.

.Before HICKS, ALLEN and MARTIN, Circuit Judges.

HICKS, Circuit Judge.

Appellant, Dr. Landsborough, was indicted and convicted of purchasing "a derivative of opium, to wit: forty (40) one-quarter grain Morphine Sulphate tablets, the same not being in the original stamped package, in violation of Section 2553, Title 26, United States Code [26 U.S.C.A. Int. Rev.Code, § 2553]." He appealed.

The Government's evidence in resume is: that appellant was a doctor but had no license to handle or dispense narcotics since 1945; that on the 20th day of January, 1947, the date alleged in the indictment, Narcotic Agents McDonald and Ripberger, followed George Bishop, who was driving appellant's car, from the Lynnfield drugstore in Cleveland, Ohio, to Hiram, Ohio, where Bishop lived, and later to appellant's home at Garrettsville, Ohio, where Bishop left the car in the garage and went into appellant's home. When he came out he was accosted by the narcotic agents and questioned. The agents and Bishop then returned to appellant's house and found him in the kitchen. The identity of the agents was disclosed and Bishop said to appellant, "I just told them I brought you some morphine tablets." Agent McDonald followed appellant into another room and appellant came back into the kitchen, after telling McDonald he had some drugs, and laid a small vial [Government Exhibit No. 2] on a table in the presence of Bishop and the agents. The vial contained forty tablets of one-fourth grain morphine sulphate and bore neither label nor tax stamps.

Both, at the close of the Government's testimony and of all the testimony, appellant moved for a directed verdict. These motions were overruled.

Appellant testified in his own behalf. He stated that the agents knocked on the back door; that Mrs. Landsborough was not at home; that in attempting to answer the knock he was moving into the kitchen as they walked in; that Mrs. Landsborough came in about fifteen minutes later; that while he was conversing with the agents he heard the front door open; that he excused himself and walked through the dining room and another small room into the office; that he told an arriving patient that he could not see her for some time and went back to the kitchen; that as he passed a table in the office he saw a vial of tablets lying there; that not knowing exactly what the vial contained, he picked it up and put it in his

pocket; that when he got to the kitchen the agents began to search him and he put the bottle of tablets on a table without comment; that he did not at any time purchase the morphine sulphate tablets and that to his knowledge no one purchased them for him; that he picked up the vial from the table because he did not think they should be there; that it turned out that the vial he picked up in the office was the same vial that had been issued to him a week before on a prescription written by Dr. Deyell for fifty tablets of quarter grain morphine sulphate and that the prescription had been filled in Koshes' drugstore in Ravenna; that it was written for fifty tablets because appellant intended to go to Florida. Appellant further testified that Bishop came into the house about ten minutes before the agents and looked after the furnace; that the prescription was dispensed in a cardboard container and that some one had transferred it to the vial because he was going to travel and the container was an unsafe package.

Mrs. Landsborough testified that on January 13th appellant developed bronchial trouble and ran a high temperature; that she called Dr. Deyell and the doctor examined him and advised her to take him to Florida, where they went on January 22nd by airplane; that the doctor wrote a prescription for fifty one-quarter grain tablets of morphine sulphate which she had filled at Pelshue's drugstore in Garrettsville; that she received the tablets in a cardboard box, with the label and instructions put thereon by the druggist; that she brought them home and put them in a glass bottle to keep them herself because they crushed very easily; that the bottle was similar to the Government's Exhibit No. 2, but that some of the tablets had been used; that she kept them in her purse because she was the only one to administer them to the doctor, but that on that particular day she was going to the bank and not wanting to carry them, she laid them on the table in the office; that she was gone about twenty minutes and on her return found the narcotic agents in the kitchen. On cross-examination she further testified that Bishop himself was an addict

and frequently used appellant's car because his own car was broken down.

The motions for a directed verdict were properly overruled.

The statute under which appellant was indicted, provided that, "* * * the absence of appropriate tax-paid stamps from any of the aforesaid drugs shall be prima facie evidence of a violation of this subsection by the person in whose possession same may be found * * *." This placed upon appellant the burden of explaining and justifying his possession of the morphine sulphate. Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632. See Goode v. United States, 80 U.S. App.D.C. 67, 149 F.2d 377. Appellant's evidence did not convincingly destroy the statutory presumption of his guilt. The jury was the sole judge of the credibility of the witnesses and they did not believe either appellant or Mrs. Landsborough, who contradicted each other as to where the morphine sulphate tablets came from.

Appellant here challenges the lack of a search warrant for the morphine sulphate tablets. The challenge must fail for more than one reason,—first, the question was not raised in the District Court; second, the procedure for challenging it was not followed. See Segurola v. United States, 275 U.S. 106, 48 S.Ct. 77, 72 L.Ed. 186. Third, from our viewpoint there was nothing unreasonable in the manner by which the agents secured possession of the contraband tablets.

Appellant contends that his arrest was unlawful and relies upon United States v. Di Re, 332 U.S. 581, 68 S.Ct. 222. The facts of the Di Re case, and the question there decided, bear no relation to appellant's case. The manner of appellant's arrest was not questioned in the District Court and from our viewpoint the interest of justice does not require that we consider it here, except to say that the record discloses that he was not arrested on the critical day, January 20, 1947. The record discloses that he was not well, and he and Mrs. Landsborough were arranging for an early trip to Florida for his health; that there was no officer available before

whom he might have been taken and that by agreement between the agents and himself he voluntarily appeared the next day and surrendered himself at the agents' offices in Cleveland.

The judgment appealed from is affirmed.