Nathan **SHURMAN** and Louis **Chebatt,**

v.

**UNITED STATES of America.**

No. 14919.

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1955.

Rehearing Denied Feb. 28, 1955.

Julius Lucius Echeles, Chicago, Ill., for appellant.

Cavett S. Binion, Asst. U. S. Atty., Ft. Worth, Tex., Heard L. Floore, U. S. Atty., Ft. Worth, Tex., for appellee.

Before BORAH, RIVES and TUTTLE, Circuit Judges.

TUTTLE, Circuit Judge.

Defendants were indicted and convicted of unlawfully obtaining 2047 grains of marihuana on July 22, 1953, in Tarrant County, Texas, in the Northern

District of Texas, without paying the special tax upon the transfer thereof, they being transferees subject to pay said tax, in violation of 26 U.S.C.A. § 2593(a).[1] Before trial defendant Shurman moved to suppress certain evidence, namely, a quantity of a substance claimed by the Government to be marihuana, alleging that it was seized without a search warrant and without probable cause, in a search of Shurman's automobile by one Naylor, an officer of the State of Texas, made at the instance of, or in concert with, officers of the Federal Government. The trial court reserved decision upon the motion until after the evidence for the Government was presented. Both defendants pleaded not guilty, and the case was tried by jury. Motions of both defendants for judgments of acquittal were made and denied at the close of the Government's evidence and at the close of all the evidence. The jury found both defendants guilty and the trial court imposed sentences of three years' imprisonment on each.

The evidence for the Government was as follows: W. E. Naylor, a Texas law enforcement officer, testified that on about July 15, 1953, he received information by telephone from a Federal Narcotics officer named Findley, that Findley was informed and believed a car with a certain license number would be coming from El Paso to Fort Worth carrying narcotics. At about noon on July 22, 1953, Naylor stopped the defendants in a car with that license number and arrested them solely on the basis of the information from Findley. After placing them in the custody of a highway patrolman at a Justice of the Peace Court, he returned to search the car, and found in the trunk thereof two packages of what appeared to him to be marihuana.

These packages he later turned over to Federal Narcotics Agent Johnson. Naylor thereafter placed the car in storage in order for it to be confiscated by the Federal Government, and notified Findley of the arrest. He was present when Findley made a thorough search of the car about five o'clock that afternoon. Naylor admitted he had neither a search warrant not a warrant for the defendant's arrest. He identified the wrappings in which the alleged marihuana was found, one of which bore the name and address of a shop in Juarez, Mexico, and the other of which was a Juarez newspaper dated July 21, 1953.

Okla W. Johnson testified that as a Federal Narcotics Agent he had demanded a marihuana order form from the defendants on the day of the arrest, and had asked them if they had marihuana dealers' tax stamps, and that they answered that they had neither. J. W. Spillman testified that he was a Government chemist and that he made microscopic and chemical examinations of the substance turned over to him by Findley and Johnson; that in his opinion it was marihuana; and that the substance was finely cut up stems of the marihuana plant, and also resin and seeds of that plant.

William T. Findley testified, with respect to defendant Shurman's motion to suppress, and outside the presence of the jury, that he was a Federal Narcotics Agent working under-cover in Dallas in July, 1953; that he had purchased marihuana on four occasions in the first two weeks of that month from defendant Shurman; that Shurman told him he planned to go to Mexico the next day to buy marihuana; that Chebatt told him he had a source of heroin in Juarez and was going with Shurman intending

1. 26 U.S.C.A. § 2593(a):
 "It shall be unlawful for any person who is a transferee required to pay the transfer tax imposed by Section 2590(a) to acquire or otherwise obtain any marihuana without having paid such tax; and proof that any person shall have had in his possession any marihuana and shall have failed, after reasonable notice and demand by the collector, to produce the order form required by section 2591 to be retained by him, shall be presumptive evidence of guilt under this section and of liability for the tax imposed by section 2590(a)."

to buy some; that Findley informed Naylor by telephone that he believed a car with license number HB–2752 would be coming from Juarez or El Paso with narcotics; that he did not ask Naylor to make any arrest; that during the following week he talked with Naylor twice by telephone and believed that they talked about the car; and that to his understanding there was no policy of the Federal Narcotics Bureau to have arrests made in such cases by state police, but that the Bureau keeps constantly in touch with state and city enforcement agencies, not working together, but for the common interest of crime prevention. On this evidence the trial court overruled the motion to suppress.

The only witness for the defense was defendant Shurman, who testified that he was an itinerant saxophone player; that he went to Juarez around July 5, 1953, to get a job as musician in a band; that he left Juarez about midnight, July 22, 1953, and drove straight towards Fort Worth; that the automobile was his but that he knew nothing about the alleged marihuana in the trunk of the car; that he suspected that it was planted there by a Juarez cab driver with whom he had had an argument; that he stopped between El Paso and the place of arrest just west of Fort Worth only for gas and to call his wife; and that he did not see or talk with anyone.

Both defendants appeal from the conviction, specifying the following as errors:

I. The court erred in failing to suppress the evidence upon motion properly made, because of an illegal search and seizure in violation of the Fourth and Fifth Amendments.

II. The prosecution failed to prove proper venue and place of the offense.

III. The prosecution failed to prove that a notice and demand for an order form was made by the Collector of Internal Revenue upon the defendants in accordance with 26 U.S.C.A. § 2593(a).

IV. The court erred in refusing to give certain instructions, and in giving certain erroneous instructions.

Although we must reverse the judgment of the trial court on the second ground, we will discuss all of the assigned specifications of error for the guidance of the court on another trial.

## I. SEARCH AND SEIZURE:

■ Two questions are presented here. The first is: Would the search as conducted by the state officers have been illegal if it had been conducted by federal officers? The second is: If the search was illegal, was there such "cooperation" between the state and Federal officers as would proscribe the evidence when later offered in a federal prosecution? It is not necessarily true that if an illegal search is made by state officers the fruits of the search are suppressed when offered in evidence in a federal prosecution. Scotti v. United States, 5 Cir., 193 F.2d 644.

■ As to the first of these two questions, our recent decision of Rent v. United States, 5 Cir., 209 F.2d 893, we believe to be controlling on the question of the lawfulness of the search by the state officers here. In that case the occupants of an automobile were arrested and the car was taken into custody, locked, and parked overnight in a police parking lot. We held that a search made the next morning without a warrant was unreasonable; even though the officers had grounds which seem as strong as those in the present case to believe there was marihuana in the car,[2]

2. The officers had received a tip about a cache of marihuana in a certain vicinity, which they took under surveillance. 209 F.2d 893, 895: "The officers testified that a street light on the corner furnished sufficient light for them to observe the occurrences. Rent opened the right hand door of the automobile, bent over inside,

and then straightened up and lit a cigarette * * * Griffin was of the [expert] opinion from the manner in which Rent smoked this cigarette that it was a marihuana cigarette * * *." The officers watched the car constantly thereafter until the defendants were arrested. They saw one of them pick up a

the opportunity after the arrest to obtain a search warrant was a factor to be considered together with those grounds, in determining the reasonableness of the search. So considered, we concluded that the search violated the Fourth Amendment. The lack of a warrant could not be excused, either under the principle of search incident to arrest, the search and the arrest not having been contemporaneous; or under Carroll v. United States, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790, because the danger that the automobile might be quickly moved from the locality, basic to the Carroll decision, was lacking under these circumstances.[3]

In the present case, the car had been left beside the highway after the arrest, and not on a police parking lot; and there was evidence that the trunk of the car would not lock; however, the differences between these facts and those in the Rent case do not seem to us a sufficient basis to apply a different rule here. In the present case, the state officer had the car keys and the car was "not likely to be disturbed", 209 F.2d 897, and this is the same essential state of facts as that in the Rent case. We hold, therefore, that this search was illegal.

But as to the second question, even though the search was illegal, the evidence was nevertheless not inadmissible, because there was not shown to have been participation by federal officers or such cooperation between them and state authorities in making the search, as to prevent the use of the evidence seized by the state officers, in a federal prosecution.

The defendants sought to establish a pattern of cooperation between state and federal authorities, amounting to a custom that state cases would be turned over to federal officers for adoption, to bring this case within the decisions that evidence illegally obtained by state officers where such a pattern is present is not admissible in a federal prosecution.[4] Such a pattern is not established by the evidence, and in fact the weight of the evidence in the record is against the defendants' contentions. Agent Findley testified that according to his understanding, it was not the Bureau's policy to have automobiles suspected of containing narcotics stopped by the state police. There was no evidence of any tacit understanding to do this between state and federal authorities, although the defense sought by repeated questions to show that there was such an understanding. It was admitted that they "kept constantly in touch" but it was expressly denied at the same time that they "worked together." There was not even any evidence that the majority of narcotics law violators apprehended by state police in the area had been turned over for federal prosecution in the past. Thus, there was here not even this element, which was held not to be sufficient standing alone to establish the existence of such a custom in Scotti v. United States, supra.

In the absence of proof of such a custom, then, the only facts shown by the evidence which tend to show cooperation between state and federal enforcement agencies were the passing on of the information from Findley to Taylor that he believed a car with a certain

cigarette known to be a marihuana from the ground, then made the arrest. At that time they found a marihuana cigarette butt near where they saw Rent flick his stub.

3. As we interpreted United States v. Rabinowitz, 339 U.S. 56, 70 S.Ct. 430, 94 L.Ed. 653, in the Rent case, the Supreme Court meant there to relax the strict requirement of a search warrant only where a search is made contemporane-

ously with a valid arrest and of the arrested person and the immediately surrounding premises under his control; or where there is a strong likelihood that evidence will be lost unless an immediate search is made.

4. Fowler v. United States, 7 Cir., 62 F.2d 656; Lowrey v. United States, 8 Cir., 128 F.2d 477; United States v. Irwin, D.C.W.D.Ark., 86 F.Supp. 362.

license number would be coming down a certain highway containing narcotics; the two telephone conversations thereafter in which the car was mentioned; the fact that a federal officer made a second search some four hours after the search by the state officer; the fact that the state and federal officers frequently exchanged information; the turning over of the case to federal authorities after the search; and the adoption of the case by them.

█ First, as to the federal officer's search, it is significant that it was made quite independently and long after the first search and discovery of the evidence was complete. This was not participation in the illegal seizure of the evidence. Cf. Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819. And this second independent search bespeaks cooperation only to the same extent that federal adoption of the prosecution does, and is not a significant element of cooperation additional to the adoption. We do not consider the post-seizure occurrences, the later search and adoption of the prosecution, as indicating significantly an antecedent attempt by federal officers to do indirectly what they could not do directly. The fact that the federal officers kept "constantly in touch" with state officers, and that Findley gave the information which led to the arrest and had two telephone conversations in which Shurman's car was mentioned, are the main circumstances on which the defendants urge us to find there was here such an attempt.

To find that these matters do establish such a degree of cooperation as to bar the evidence illegally seized by state police, would be to infer an attempt by federal authorities to do indirectly what the Fourth Amendment forbids them to do, from facts which on their face indicate a laudable comity in law enforce-

ment. Without some showing of a tacit or expressed understanding, difficult though it may be to find proof thereof, we would be unwilling to hold that giving of information which results in an illegal search, constitutes an attempt to procure evidence illegally.

The case most nearly in point is Sloane v. United States, 10 Cir., 47 F.2d 889, where it was held that mere passing on of a tip as to the location of a still, by a federal to a state officer, followed by an illegal search by the state officer and federal adoption of the prosecution, did not alone constitute cooperation.[5]

In United States v. Lustig, 3 Cir., 159 F.2d 798, the Third Circuit decided that the passing on of information to state officers by a federal agent that persons he believed were guilty of a state offense were present in a certain hotel room, plus the fact that after apprehension of the suspected persons and an unlawful search revealing counterfeiting apparatus they were turned over for federal prosecution, did not add up to that degree of cooperation which would make the evidence seized inadmissible under the Fourth Amendment. The Sloane case was cited as authority for this. On certiorari to the Supreme Court, the case was reversed on a different ground. Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819. The ground of reversal was that the record showed that the federal officer, after Lustig's arrest, entered the hotel room while the state officers were searching it, and participated in the search before it was completed, by evaluating the evidence as an expert on counterfeiting, as it was uncovered. The Supreme Court declined to pass on the principle relied upon by the Court of Appeals, 338 U.S. 79, 69 S.Ct. 1372; and thus, the reversal of Lustig's conviction has not weakened the authority of the Sloane case.[6]

5. Our present case, like the Sloane case, is distinguished from Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293, in that there the state officers were acting solely to aid in the enforcement of federal law. Here, possession of

marihuana violates Texas law. Vernon's Texas Penal Code, Art. 725b.

6. As we intimated earlier, the Supreme Court's holding in the Lustig case is easily distinguishable from the facts be-

■ The reasoning of the Sloane case seems correct. We cannot denounce such exchange of information between law enforcement agencies where no attempt is otherwise shown to do indirectly what is prohibited to do directly. Furthermore, it should be noted that the basis of our holding herein that what was done here by the state officer was improper, is not that there was not probable cause for the search,[7] but merely a failure to obtain a search warrant when it might well have been obtained, or to make a search of the car at the time of arrest. It would be strange indeed to say that the federal agent meant to induce an illegal search, when it appears that the search could very easily have been made lawfully by the state officer. At any rate, the mere giving of the information we do not regard as requesting any action whatsoever, in the absence of an understanding, voiced or tacit, to that effect; much less do we consider it an instigation of an unlawful search.

■ With respect to defendant Chebatt, there is an additional ground for holding the evidence admissible, namely, that he asserted no proprietary or possessory interest in the car or the marihuana, and therefore cannot complain that the search or seizure was unlawful. Cantrell v. United States, 5 Cir., 15 F. 2d 953, certiorari denied 273 U.S. 768, 47 S.Ct. 572, 71 L.Ed. 882; see also Goldstein v. United States, 316 U.S. 114,

at page 121, 62 S.Ct. 1000, 86 L.Ed. 1312, and authorities cited.

We hold, therefore, that the court did not err in overruling the motion to suppress.

## II. VENUE:

The statute under which the defendants were convicted, 26 U.S.C.A. § 2593 (a), creates a presumption from the fact of possession of marihuana plus the failure to produce the order form upon demand, that the marihuana was acquired in violation of the statute. Defendants argue (A) that the statutory presumption of guilt attaching from the possession of the drug and failure to produce the order form, does not carry with it· a presumption that the crime was committed at the *place* where possession is proved, and (B) that the evidence rebuts any such presumption.

■ A. Although the early cases cited by defendants' brief, Brightman v. United States, 8 Cir., 7 F.2d 532; Cain v. United States, 8 Cir., 12 F.2d 580; Graham v. United States, 8 Cir., 15 F.2d 740; Donaldson v. United States, 8 Cir., 23 F.2d 178; and Hood v. United States, 8 Cir., 14 F.2d 925, as well as De Bellis v. United States, 7 Cir., 22 F.2d 948, support the contention that the presumption created by such statutes does not extend to the place and venue of the offense, all of the more recent cases and the weight of authority are to the contrary. While the opinion of the Supreme Court in Casey v. United States, 276 U.S. 413, 48 S.Ct. 373, 72 L.Ed. 632,

---

fore us, because there was in that case actual participation in the uncovering of the very evidence sought to be excluded; the federal officer was "in it before the object of the search was completely accomplished." 338 U.S. 74, 79, 69 S.Ct. 1372, 1374. Here, the search in which the marihuana was found was completed hours before the federal officer commenced his independent quest for heroin.

7. Cannon v. United States, 5 Cir., 158 F.2d 952, certiorari denied, 330 U.S. 839, 67 S.Ct. 980, 91 L.Ed. 1286; Medina v. United States, 5 Cir., 158 F.2d 955; Turner v. Camp, 5 Cir., 123 F.2d 840. Cf. Hus-

ty v. United States, 282 U.S. 694, 51 S.Ct. 240, 75 L.Ed. 629; Kelly v. United States, 5 Cir., 197 F.2d 162; United States v. Li Fat Tong, 2 Cir., 152 F.2d 650. And even though Texas courts take a narrower view of what constitutes probable cause, Crawford v. State, 148 Tex.Cr.R. 563, 189 S.W.2d 871; Timberlake v. State, 150 Tex.Cr.R. 375, 201 S.W.2d 647, Naylor could certainly have obtained a search warrant if he had obtained Findley's testimony that defendants had told him they intended to bring narcotics from Mexico.

is not precisely in point, it seems to approve the reasoning of the Court of Appeals' opinion in the same case, 9 Cir., 20 F.2d 752, that the presumption does extend to venue. See also the note in 13 Cornell L.Q. 627. All cases since Casey v. United States have held so. Acuna v. United States, 5 Cir., 74 F.2d 359; Landsborough v. United States, 6 Cir., 168 F.2d 486; Anderson v. United States, 6 Cir., 189 F.2d 202; United States v. Stallsworth, 7 Cir., 193 F.2d 870; certiorari denied 343 U.S. 942, 72 S.Ct. 1035, 96 L.Ed. 1347; Rosenberg v. United States, 9 Cir., 13 F.2d 369; Jones v. United States, 10 Cir., 193 F.2d 115; Killian v. United States, 58 App.D.C. 255, 29 F.2d 455; Goode v. United States, 80 U.S.App.D.C. 67, 149 F.2d 377; Frazier v. United States, 82 U.S.App.D.C. 332, 163 F.2d 817. See also Charley Toy v. United States, 2 Cir., 266 F. 326, certiorari denied 254 U.S. 639, 41 S.Ct. 13, 65 L.Ed. 452. In this Circuit, then, this proposition is so firmly established as to be beyond dispute.

■ B. We agree with the defendants, however, that here the presumption was rebutted by the evidence;[8] and since there was no evidence, other than the possession of marihuana in the Northern District of Texas and the failure to produce the order form on demand, that it was acquired there, the prosecution failed to prove an essential element of the offense.

The mere self-serving testimony of the defendant, Frazier v. United States, 82 U.S.App.D.C. 332, 163 F.2d 817, or his family, Landsborough v. United States, 6 Cir., 168 F.2d 486, that the narcotics were obtained elsewhere than the place of apprehension, may properly be regarded as of less weight than the circumstance of possession in the particular district; and the jury may by virtue of the statutory presumption find the defendant guilty where the inference that the narcotics were obtained in the particular district is negatived only by such evidence. See also Goode v. United States, 80 U.S.App.D.C. 67, 149 F.2d 377. However, in this case there was considerable evidence before the jury pointing to the conclusion that the marihuana was in fact obtained in Mexico or El Paso and not in the Northern District of Texas. Even if we discount entirely Shurman's self-serving testimony denying any knowledge of the marihuana and claiming he had driven all the way from Mexico without stopping except for gasoline and without talking to anyone, we cannot ignore the arresting officer's highly credible testimony before the jury that Findley had alerted him that Shurman's car was *in El Paso* and would be coming *from El Paso* with narcotics. There was no objection to this testimony. Although it was hearsay and perhaps partly an opinion or conclusion, it is *relevant* to the question whether the marihuana was in fact acquired in the Northern District, and tends to show with enough force to be entitled to serious consideration that it was not obtained there. Any exclusionary rules of evidence barring this testimony were waived. Findley testified to the jury that it was as a result of a conversation with the defendants

---

8. There is no unanimity among the authorities as to the effect to be given such a rebuttable presumption. Wigmore says that the presumption disappears from the case as soon as *some* evidence negativing the inferred facts is introduced. 9 Wigmore, Evidence §§ 2491, 2498a. But some cases hold that the presumption is destroyed only by *substantial* evidence to the contrary. Coffin v. United States, 156 U.S. 432, 15 S.Ct. 394, 39 L.Ed. 481; Id., 162 U.S. 664, 16 S.Ct. 943, 40 L.Ed. 1109; but see 9 Wigmore, Evidence

§ 2511 note 4. Whatever the general rule, it is noteworthy that the statutory presumption with which we are dealing is constitutionally valid only because there is a rational connection between the fact proved and the ultimate fact presumed. Casey v. United States, supra; Tot v. United States, 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519. This kind of presumption, then, would seem to be no stronger than this rational connection, and to be rebutted when other evidence

on July 14th [9] that he informed Naylor on the 15th that the car would be coming from El Paso, and this also tends to strengthen the inference that the marihuana was not purchased in the Northern District of Texas. Combined with this evidence are circumstances which lend striking support to the inference that the marihuana was brought by the defendants from the vicinity of El Paso. These were the facts that part of the marihuana was found wrapped in a Juarez, Mexico, newspaper dated the date before the arrest, and the rest was wrapped in a paper sack bearing the printed name of a Juarez shop, and that the defendants were apprehended on the highway from El Paso coming from that direction. We are inclined to think that of the two hypotheses, (1) that the marihuana was brought from Juarez or El Paso (just across the river) that very day by defendants, or (2) that the marihuana had just been brought thence by another person and immediately sold to defendants in the Northern District, or that it had been rewrapped by them in a newspaper just brought from Mexico, the former is more in conformity with these circumstances; particularly since it is apparent that defendants had no reason to create false evidence. They could hardly have anticipated that they would be prosecuted under this statute (instead of the Texas Penal Code or Federal customs laws) or that this peculiar issue would arise.

The sum of this evidence constitutes, in our mind, substantial evidence countering the statutory presumption from the single circumstance of possession in the Northern District without an order form. That single circumstance, once countered by substantial evidence, is but a circumstance like any other, and weighing the combined evidence, we do not think a jury could reasonably conclude that it excluded every reasonable hypothesis except that there was an acquisition of marihuana in the Northern District by these defendants.[10] Consequently we hold that there was a failure of proof to submit to the jury the question of venue, which was essential to a conviction.

## III. NOTICE AND DEMAND:

■ Defendants make much of the fact that the proof showed a demand for the order form for narcotics was made only by a Narcotics Agent, although 26 U.S.C.A. § 2593(a) creates the presumption of illegal purchase only after the person possessing narcotics shall have failed "after reasonable notice and demand by the collector" to produce the order form. The Government having presented in a supplemental brief the text of departmental orders [11] showing

---

of equal persuasiveness, implying a contrary result, is introduced.

9. The substance of this conversation of July 14th was disclosed by Findley in his testimony on the motion to suppress, given while the jury was withdrawn. This was to the effect that Shurman told him that he intended to go to Juarez, Mexico, to purchase marihuana. If this testimony could properly be considered by the court on the motion to acquit, its probative effect would be quite substantial, since of course it may be inferred from a person's statement that he intended to do something, that he later actually did it. Mutual Life Ins. Co. of New York v. Hillmon, 145 U.S. 285, 295, 12 S.Ct. 909, 36 L.Ed. 706. However, we find no authority for this proposition that evidence given outside the presence of the jury ought to be considered by the court on a

motion to acquit. We, therefore, give no weight to this evidence in our consideration of the case.

10. For the test to be applied by appellate courts in a situation of this kind see Vick v. United States, 5 Cir., 216 F.2d 228, 232.

11. 17 F.R. 9051:
"Office of The Secretary
(Treasury Department Order No. 157)
Commissioner of Customs and Commissioner of Narcotics Delegation of Functions
"By virtue of the authority vested in me by Reorganization Plan No. 26 of 1950, there are hereby transferred to the Commissioner of Customs and the Commissioner of Narcotics, to be exercised by either one of them separately, the functions relating to notice and demand to produce order forms for marihuana

that a delegation of this function to Narcotics Agents has been made, defendants reply with a contention that such delegation is invalid because administrative rule-making cannot change specific statutory provisions. The departmental orders set forth in the footnote speak for themselves that a delegation was attempted; furthermore, we are satisfied that such delegation was an effective exercise of rule-making power which did modify the statute These orders were made pursuant to the Reorganization Act of 1949, 5 U.S.C.A. §§ 133z to 133z–15, which vests in the President extremely broad powers of a quasi-legislative nature, to submit to Congress reorganization plans which may include the transfer of the statutory functions of one agency to another; which plans are to become effective with the full effect of law sixty days after submission to Congress (Congress being in continuous session for that period) unless either House adopts a resolution by majority vote disapproving the plan, within such sixty-day period. Under this Act the President submitted Reorganization Plan No. 26 of 1950, 15 F.R. 4935, 5 U.S.C.A. following section 133z–15, to both Houses, and it became effective July 31, 1950, and was duly published in the Statutes at Large, 64 Stat. 1280–

1281, in accordance with 5 U.S.C.A. § 133z–9. The departmental orders set out in the footnote were made in strict accordance with § 2 of Reorganization Plan No. 26 of 1950. Therefore, because of the extraordinary nature of the President's powers under the Act, these orders have effectively transferred the function of making the demand for the order form to all Narcotics Agents.

## IV. ALLEGED ERRORS IN INSTRUCTIONS TO JURY:

A. As to the trial court's instruction with respect to proof of the place the offense was committed, we find it unnecessary to pass upon this in view of what we have said on the subject of venue.

B. The trial court's refusal to charge the jury concerning the notice and demand for the order form, if erroneous, was harmless, because the evidence was uncontradicted that such reasonable notice and demand were in fact made by an authorized officer. Certainly it was not error to refuse defendants' requested charge, which was predicated on the erroneous premise that such notice and demand had to be made by a Collector of Internal Revenue, as if the departmental orders discussed above were of no effect.

under section 2593 of the Internal Revenue Code.

"The functions herein transferred may be delegated by the Commissioner of Customs and the Commissioner of Narcotics to subordinates in their respective bureaus.

"Dated: October 1, 1952.
　　　　　E. H. Foley
　　Acting Secretary of the Treasury
(Seal)
"(F.R. Doc. 52–10955;
　Filed, Oct. 9, 1952; 8:45 a.m.)"
17 F.R. 9051:
　"Department of The Treasury
　　Bureau of Narcotics
　　(T.D. No. 46)
　District Supervisors and Agents
　　Delegation of Functions
"The Secretary of the Treasury, by Treasury Department Order No. 157,

transferred to the Commissioner of Narcotics the functions relating to notice and demand to produce order forms for marihuana under section 2593 of the Internal Revenue Code (26 U.S.C. § 2593) and authorized the delegation of such functions to subordinates of the Bureau of Narcotics. Accordingly, the Commissioner of Narcotics hereby delegates such functions to the district supervisors and agents of the Bureau of Narcotics.

"This delegation of functions shall take effect upon publication in the Federal Register.
　　　　　H. J. Anslinger
　(Seal)　Commissioner of Narcotics
"Approved: October 1, 1952.
　　E. H. Foley
　Acting Secretary of the Treasury
"(F.R. Doc. 52–10956;
　Filed Oct. 9, 1952; 8:46 a. m.)"

C. This brings us to the defendants' final specification of error, the court's refusal to give the instruction requested by defendants quoting the statutory definition of marihuana, 26 U.S.C.A. § 3238 (b),[12] and instructing that the defendants should be found not guilty unless the jury found that the Government chemist made his analysis with due regard for the statutory exclusion of certain parts of the marihuana plant from the definition of marihuana.

 The definition of marihuana in the statute is complicated and confusing. The court declined to permit unqualified witnesses to testify that the seized articles contained marihuana, thus correctly indicating that such a determination was one in which the jury needed the assistance of expert opinion. Unquestionably, therefore, the court should have given to the jury a definition of marihuana, even though the charge requested was, as to its second part, itself unclear. The chemist testified that he made both a chemical and microscopic test and found resin present. The fact that he also found present particles of the plant *cannabis sativa* that are excluded from the definition, did not prevent the jury from considering whether there was also present resin from the plant; for them to do this they needed an appropriate instruction from the court.

We have discussed the points raised on this appeal at some length because the case must go back for a new trial and the trial court is entitled to have such guidance as is available from our views on the points specifically raised.

The judgment is reversed and the case remanded for a new trial.

12. 26 U.S.C.A. § 3238: "Definitions * * "(b) Marihuana. The term 'marihuana' means all parts of the plant Cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds, or resin; but shall not include the mature stalks of such plant, fiber produced from such stalks, oil or cake made from the seeds of such plant, any other compound, manufacture, salt, derivative, mixture or preparation of such mature stalks (except the resin extracted therefrom), fiber, oil, or cake, or the sterilized seed of such plant which is incapable of germination."