**John E. BRADFORD, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 15624.**

United States Court of Appeals
Ninth Circuit.

March 9, 1959.

On Rehearing Oct. 9, 1959.

John E. Bradford, in pro. per., Cantillon & Cantillon, Beverly Hills, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Leila F. Bulgrin, Robert John Jensen, Asst. U. S. Attys., Los Angeles, Cal., for appellee.

Before FEE, BARNES and HAMLIN, Circuit Judges.

HAMLIN, Circuit Judge.

The appellant, John E. Bradford, was convicted by a jury of two counts in an indictment charging him with selling heroin on two different dates in violation of § 174, Title 21 U.S.C.A. He received a sentence of fifteen years on each count, the sentences to run consecutively.

According to a portion of the Government's testimony, the government agent Farrington made purchases of heroin on two occasions from Bradford and paid him the sum of $275.00 on each occasion. Bradford's testimony, while similar to Farrington's on many points, differed therefrom in certain particulars. Bradford admitted that he received the money from Farrington on each occasion. His story, however, was that Farrington had asked him to make a "buy" of heroin for him from a certain "Pat". The appellant testified that he was an addict and that Farrington had said that he would give him a couple of capsules of heroin if he, Bradford, made the buy for him. Bradford then testified that he contacted "Pat" and was told by "Pat" where the heroin would be and where to leave the money. Bradford further testified that

he met Farrington at this place, and that Farrington picked up the heroin in a brown package in a gutter underneath an automobile.

Concerning the second transaction, Bradford testified that Farrington had likewise given him $275.00 to buy heroin, that he had contacted "Pat", and was told that the heroin would be in a brown paper bag under a palm tree at a certain address. He further testified that he and Farrington drove by the address in Farrington's car, saw the brown bag under the palm tree, and that Farrington had then brought him back to where they had started from. Farrington testified that he later went back to the palm tree, picked up the brown bag, and that it was found to contain heroin. Bradford further contended that he was a heroin addict, that he was not interested in selling narcotics, and that while Farrington had told him that he would give him a few capsules of heroin if he made the buy for him that Farrington had not lived up to his promise in this regard.

Bradford further testified that he did not know where the heroin came from or that it was imported into the United States. He testified he thought it could be legally obtained by a doctor's prescription. He also introduced testimony by a chemist that heroin was derived from morphine by a simple process, that morphine could be synthesized and this had been done at the University of Rochester in 1952; that codeine, a derivative of opium, was manufactured in the United States; and that heroin could be produced from codeine. During the trial it was stipulated by the Government and the appellant that in 1954, 1955 and 1956, many thousands of ounces of morphine alkaloids and salts had been lawfully produced in the United States from lawfully imported raw opium.

Appellant, through his Court-appointed counsel, in an opening brief of 155 pages makes many claims of error.

The statute which the appellant was convicted of violating (the Jones-Miller Act, § 174, Title 21 U.S.C.A.) reads as follows:

"Whoever fraudulently or knowingly imports or brings any narcotic drug into the United States or any territory under its control or jurisdiction, contrary to law, or receives, conceals, buys, sells, or in any manner facilitates the transportation, concealment, or sale of any such narcotic drug after being imported or brought in, knowing the same to have been imported or brought into the United States contrary to law, or conspires to commit any of such acts in violation of the laws of the United States, shall be imprisoned not less than five or more than twenty years, and, in addition, may be fined. * * *

"Whenever on trial for a violation of this subsection the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.

"For provision relating to sentencing, probation, etc., * * *."

The appellant first attacks the constitutionality of this Act. Many cases have upheld the constitutionality of this and similar statutes. Gonzales v. United States, 9 Cir., 1947, 162 F.2d 870; Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904; Casey v. United States, 1928, 276 U.S. 413, 48 S. Ct. 373, 72 L.Ed. 632.

Recently, this Court in considering a similar attack upon the constitutionality of a similar section [§ 176(a) Title 18 U.S.C. covering the importation, possession and sale of marihuana] said in Caudillo v. United States, 1958, 253 F.2d 513, 515:

"The Supreme Court (Yee Hem v. United States, 1925, 268 U.S. 178, 45 S.Ct. 470, 69 L.Ed. 904) and this Court (Hooper v. United States, 9 Cir., 1926, 16 F.2d 868; Rosenberg v. United States, 9 Cir., 1926, 13 F. 2d 369) have held the presumption of unlawful importation of narcotic

drugs arising from possession not unconstitutional. 'The statute has laid down a rule, not of substantive law * * * but merely of evidence.' Stein v. United States, 9 Cir., 1948, 166 F.2d 851, certiorari denied 334 U.S. 844, 68 S.Ct. 1512, 92 L.Ed. 1768; Ng Choy Fong v. United States, 9 Cir., 1917, 245 F. 305, 307. Requirement of proof 'to the satisfaction of the jury' is not unconstitutional; Gonzales v. United States, 9 Cir., 1947, 162 F.2d 870, 871. It is not unconstitutional as forcing defendant to testify; Yee Hem v. United States, supra; Dear Check Quong v. United States, 1947, 82 U.S.App.D.C. 8, 160 F.2d 251; Mullaney v. United States, 9 Cir., 1936, 82 F.2d 638, 641; Rosenberg v. United States, supra."

■ We hold the statute to be constitutional.

Appellant makes an attack upon the instructions given by the Court concerning this statute.

Before examining these instructions, it must be remembered that the appellant at all times denied that he possessed the heroin at any time. His contention was that at the instigation of the government agent, Farrington, he contacted by telephone a certain "Pat", and that as a result, the heroin was found by the appellant and Farrington, on one occasion in a gutter beneath the wheel of an automobile, and upon another occasion was observed by the appellant and Farrington to be under a tree. On each occasion, according to appellant, Farrington personally took the heroin without the appellant touching it at all. On the occasion where the heroin was observed by Farrington and the appellant to be under the tree, Farrington later, by himself and without the appellant being present, went to the tree and picked up the package containing the heroin.

At no time did appellant attempt to "explain the possession (of the heroin) to the satisfaction of the jury." On the contrary, at all times he denied its possession.

In this posture of the case, the Court gave certain instructions to the jury concerning the statute, which are set out in the footnote.[1]

■ We agree that these instructions are not a model to follow. While certain of these instructions set out the

---

1. (1–A) "The United States does have a right to govern imports and imported things. Therefore, the particular statute under which this offense is charged is one relating to imported heroin, and the jury must find that the heroin was imported in order to justify a conviction. But that is not too difficult a question, because we have presumptions in our law."

(1–B) "A presumption is simply the acceptance of a certain state of affairs as being true until and unless there be evidence which shows that it is not true. It is an inference which the law directs be drawn from certain facts. And it is presumed that since heroin cannot be lawfully manufactured in the United States, and there is strict narcotic control, and that any heroin found in the United States has been imported, since heroin is a subject of lawful manufacture in some nations of the world, but not here, hence, if you believe that the substance which has been introduced into evidence is, in fact, heroin, there is a presumption that it was imported heroin. It makes no dif- ference whether the defendant knew it was imported or not. But it must, in fact, have been imported. You start out with the presumption that it was imported, if you believe it was heroin, and look to the evidence to see whether the evidence explains that it was not an imported heroin, and you look to the evidence in this lawsuit."

(1–C) "Now, the presumption to which I have referred, that heroin is imported heroin, is particularly important in the light of this part of the statute:

" 'Whenever on trial for a violation of this subdivision the defendant is shown to have or to have had possession of the narcotic drug, such possession shall be deemed sufficient evidence to authorize conviction unless the defendant explains the possession to the satisfaction of the jury.' "

(1–D) "Now, if the narcotic drug were one of the kind mentioned in the statute, for which there are proper possessions, under a prescription or something of that nature, then the defendant may explain it away. There is no explanation in the

proper rule (1-A, 1-F, 1-G, 1-H and 1-I), certain parts of the others may be said to be contradictory thereof. If the defendant's contention had been that he had had possession of the heroin, but had not known that it was unlawfully imported, or that he had been informed that it was legally obtained through a prescription or otherwise, or had given some other explanation of its possession, —then the· instructions of the Court that "there is no explanation in the United States for the possession of heroin" would have been clearly prejudicial.

■ A defendant has a right to have the jury pass upon his explanation of possession. As stated in United States v. Feinberg, 7 Cir., 123 F.2d 425, at page 427:

"By force of the statute, possession of narcotics gives rise to an inference that the narcotics were imported contrary to law, and a further inference that the person in possession had knowledge of such unlawful importation. True it is, a defendant on trial may overcome these inferences by satisfactory

proof that in his case possession of narcotics did not involve a violation of the statute, either because the narcotics were not imported contrary to law or because he had no knowledge of unlawful importation. The explanation of possession, however, if it is to serve the defendant's purpose, must not only be believed by the jury but must also be one that shows a possession lawful under the statute."

In United States v. Roviaro, 353 U.S. 53, at page 63, 77 S.Ct. 623, at page 629, 1 L.Ed.2d 639, the Court said:

"Petitioner contends that the Government in all cases must make a further affirmative showing that the accused knew he possessed narcotics. He argues that his failure to do so here entitles him to an acquittal. That contention, however, has been decided against petitioner in the cases cited  *  *  *." Casey v. United States, 276 U.S. 413, 418, 48 S.Ct. 373, 72 L.Ed. 632; United States v. Chiarelli, 7 Cir., 192 F.2d 528, 531; Landsborough v. United

United States for the possession of heroin, except that one is a law enforcement officer or a customs agent engaged in the seizure or suppression of it, or an officer of a court holding it in custody for the purposes of trial or destruction."

(1-E) "As I have told you before, it is necessary that the heroin be imported in order for the jury to convict in a case of this character, but it is not necessary that the defendant know that it was imported."

(1-F) "In order for there to be a conviction in a case of this character it is necessary there be proof there actually was a sale. There is no presumption there was a sale. You look to the evidence to determine whether there was or was not a sale. The presumption comes into play only if the defendant is shown by the evidence to have had possession of the narcotic substance, if you find it to have been such."

(1-G) "Now, possession is sometimes actual, as where a person holds a thing in his hand. Possession in other instances is constructive, as where a person has dominion and control ever a thing, having immediate ability to produce, handle

or deal with it, but does not actually have it in his own hand."

(1-H) "Possession must be a knowing, wilful possession. No one is to be held to possess a thing, within the meaning of this law, if he doesn't know what he possesses. It is a knowledgeable willing possession which is intended by law."

(1-I) "The presumption that if heroin is found in the United States it is imported heroin is not conclusive. It is a presumption, that is, it is a circumstance which you are to consider as so, if it is proved that the heroin was here and in the possession of the defendant, but it is not necessarily conclusive that this be the case. This lawsuit is open to the insistence by the defendant that this was, in fact, domestic and not imported heroin.

"If you find from the evidence that this heroin involved in this case, if you believe it to be heroin, if you find that it actually is heroin, if you believe from the evidence in the case that it was manufactured in the United States, then there is no case against this defendant.

"However, you must look to the evidence in this connection. The lawsuit must be decided upon tHe evidence before you and not upon surmise or conjecture."

States, 6 Cir., 168 F.2d 486; Stoppelli v. United States, infra.

This court, in Stoppelli v. United States, 9 Cir., 1950, 183 F.2d 391, approved an instruction reading as follows:

"The law further provides that when on trial for concealment or facilitating the concealment of heroin the defendants have shown to have had possession of such heroin, such possession shall be deemed sufficient evidence to authorize the defendants' conviction, unless the defendants explain their possession to your satisfaction."

Under the facts of this case, however, there could be no prejudice to the defendant in the Court's instructions, even though under other circumstances there might be just criticism leveled at some of these instructions. There was a clear issue in this case for the jury to pass upon as to possession. The government contended the appellant had possession of the narcotics and the defendant contended to the contrary. He did not say, "Yes, I had possession, but I want to explain it." If that had been his position, the Court should have instructed the jury clearly and with no instructions in any way contradictory thereof, that his explanation was an issue for the jury to pass upon.

Under the facts of this case and considering the instructions as a whole, we hold that they were not prejudicial to the appellant.

■ In this case, the jury resolved the issue of possession against the appellant, and we hold there was ample evidence to sustain this implied finding of the jury. Having done so, and there being no evidence offered by the defendant to explain that possession, the jury were entitled under the provisions of the statute, to reach the conclusion that the narcotics were to the knowledge of the defendant imported into the United States contrary to law.

■ Appellant contends that the trial judge inadequately instructed the jury on the question of possession in connection with the purchasing or procuring agent. An instruction was offered by the defendant as set out in the footnote.[2] The Court refused to give this instruction. We see no error in this refusal. The instruction was prolix and argumentative. The Court instructed the jury as follows:

"Any person who aids, abets, commands, or causes another to do an act is as guilty of the act as if he had done it himself. Now, in this matter of the sale of heroin, if a person far removed from the supply of heroin, either actual or constructive, simply acts as a broker, then that person must have absolute knowledge and control over the situation in order to be so guilty."

The above instruction, together with those we have already quoted in Footnote 1, sufficiently covered the point involved.

■ The contention is made that there was misconduct on the part of the United States Attorney by interrupting counsel during the making of his opening statement to the jury. While defense counsel was making his opening statement, the United States Attorney made the statement set out in a footnote.[3] We see no prejudice to the appellant in these proceedings.

2. "Possession of another person, of the narcotic drug charged in the indictment, cannot be deemed possession in the defendant unless a conspiracy is established between such person and the defendant.
"The mere fact, if it is a fact, that the defendant achieved a facilitation of sale or sale through a third person, acting as a simple intermediary or procuring agent, is not sufficient, at least in itself, to ascribe that person's possession to the defendant, notwithstanding the possibility that such evidence, if found to exist by you the jury, might substantiate a participation in selling or facilitating a narcotic sale."

3. "Mrs. Bulgrin: Your Honor, I don't like to interrupt counsel's opening statement, but at this particular time it is apparent to the Government that counsel is arguing matters which pertain to matters of law, which were argued before this court and are not proper considera-

Appellant contends that the Court's instruction to the jury upon constructive possession was in error. This instruction is set out in our prior footnote numbered 1-G. We see no error in the instruction.

■ The appellant contends there was prejudicial misconduct on the part of the United States Attorney in the closing argument where the following statement was made by the United States Attorney:

"But in this particular case, ladies and gentlemen, it is submitted that under the facts that have been given to you from the witness stand, that if your verdict is not guilty on each count there would be a travesty of justice.

"Talking about the facts of this particular case, ladies and gentlemen, if your verdict, under the circumstances which have been testified to in this court on this case, is not guilty, ladies and gentlemen, the effect of the law will be nil completely. Absolutely it will end federal control of narcotics.

"Ladies and gentlemen, we submit to you that should not be your verdict."

Timely exception was made to the argument. When this matter was being argued to the trial judge upon a motion for a new trial, the judge stated:

"Do you think the jury understood that is what she was saying, that the whole federal system of enforcement of narcotic laws would fall unless this man were convicted?

"She had not contended that he was the pivotal figure in the entire fabric of narcotics vending in the United States. I think what she was undertaking to say—and what the jury understood she was undertaking to say—was that if a case with evidence as substantial as the evidence in this case is, is not worthy of conviction, then no case brought under this statute is. And the evidence in this case was certainly abundant."

We agree with the trial judge's appraisal of the government's counsel's remarks and see no error in the statement.

Appellant complains of an instruction given by the Court on the credibility of witnesses, including the defendant. We have examined the instruction and feel that it is not an incorrect statement of the law.

■ Appellant complains further that the Court failed to give the following instruction offered by the defendant:

"Of course, that case involved these objections which counsel has already proposed to the court and relates to both the general question of the constitutionality of the presumption and the application of the presumption to this particular set of facts. And those matters, your Honor, would be merely facts which would be presented, if at all, outside of the presence of the jury, in connection with counsel's previous motion for judgment of acquittal and for dismissal.

"The Court: Maybe he is going to have a whole chain here with many links in it, and if so, he is entitled to describe each link.

"So far the opening statement has tended to be the description of one link in what might possibly be a chain; I can't tell. He has the floor. I am going to let him continue.

"Mrs. Bulgrin: Very well, your Honor."

tions for the jury, that is, the constitutional objection to the presumption which was resolved against the defendant.

"The Court: He isn't arguing the constitutionality of it.

"Mr. James Cantillon: I surely don't mean to be.

"The Court: He says he is going to prove that. If he doesn't prove enough it doesn't mean a thing.

"Mrs. Bulgrin: The matters of fact, alleged fact he is talking about, would only apply to the question of the constitutional objections which he has already made and would not be matters which a jury would consider, your Honor, under the Copperthwaite case.

"The Court: Under what case?

"Mrs. Bulgrin: This case we had discussed on the motion, your Honor. Copperthwaite [Copperthwaite v. United States, 6 Cir.], 37 F.2d 846.

"The failure of the Government to produce a material witness where circumstances establish that such witness is available to the Government and not available to the defendant gives rise to an inference that the reason that the Government is not producing said witness is because the testimony of such witness would be adverse to the Government's contentions."

Appellant discusses this matter for some twenty pages in its brief. A short answer to the defendant's argument is that the person defendant is referring to (one Bobby Hawkins) was not in any sense a material witness. The government produced no testimony that such a witness was present at any of the occasions upon which the narcotics were purchased or discussed. The defense testimony was merely that Bobby Hawkins had introduced the government agent Farrington to the appellant. However, there is no testimony, even by the defendant, that any transactions occurred at that time which were relied upon by the government in the proof of either of the counts of the sale of narcotics against the appellant. There are many other objections that could be leveled at the offered instruction which we do not deem necessary to discuss, in view of our statement above as to the materiality of the testimony.

We would like to point out that in this case counsel was appointed by the Court to defend the appellant. Not only did counsel ably represent the appellant in court before the jury and later upon motion for new trial, but also in this court counsel has prepared an opening brief of 155 pages, together with a closing brief of 28 pages, and has ably presented oral argument in this court. All points that could be raised in the appellant's favor have been carefully and meticulously set out in the briefs and in oral argument, and counsel is to be commended for their industry in this matter. Undoubtedly they have been constantly conscious that appellant faces a long sentence.

However, after careful examination of all the points raised in defendant's behalf, we find nothing to justify a reversal of the case. As the trial court judge stated at the time of the motion for a new trial, the evidence of the guilt of the defendant was abundant.

Judgment affirmed.

On Petition for Rehearing

Before BARNES, HAMLIN and JERTBERG, Circuit Judges.

HAMLIN, Circuit Judge.

After the decision affirming the judgment of conviction, a petition for rehearing was filed, calling to our attention that appellant had, about a month prior to the filing of appellee's brief, petitioned the Court to supplement his opening brief by adding as an additional ground for reversal that the District Court had erred in failing to order certain notes turned over to appellant's counsel as required under the rule announced in Jencks v. United States, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103. The trial took place prior to the Jencks decision on June 3, 1957.

Due to inadvertence this petition did not reach the panel which heard the case, thus was not acted upon. Appellant's court-appointed counsel understandably believed it had been denied, and therefore did not cover the Jencks point either in brief or on oral argument. After oral argument, counsel for appellant learned that his petition to file a supplemental brief had not been denied, and subsequently petitioned for rehearing, calling to our attention that he had in effect been prevented from briefing and arguing his contention of error under the Jencks rule.

We granted the petition for rehearing "to be confined solely to the consideration of the effect, if any, on said action of the decision of the Supreme Court of the United States in Jencks v. United States. * * *" Both the government and appellant filed briefs on the issue and the matter was orally argued.

The record shows that during the trial Farrington, a government witness, testified as to his dealings with the defendant in the purchase of narcotics. He testified regarding telephone conversations with him, the place and time of meetings with him, and statements and actions of defendant at various times and places. Included in this testimony was the fact that on two occasions after he had given to the defendant government funds therefor, he had received heroin from the defendant. He described in detail the exact time, place and circumstances of his transactions with the defendant.

During the cross-examination of Farrington by defendant's counsel the following took place:

"Q. Now, you made notes, did you not, during the course of this investigation? A. I did not. During the course—out of the defendant's presence, yes.

"Q. That is what I meant. A. Yes, sir, I did.

"Q. You didn't make notes in his presence? A. No, sir.

"Q. You made notes daily or after each of these contacts with the defendant? A. Yes.

"Q. Before you took the stand yesterday you refreshed your recollection from those notes, did you not? A. I did.

"Q. Do you have a copy of those notes available? A. Yes, sir, they are available.

"Q. May I see them, please?"

The government then objected to the production of the notes upon the ground that there was no showing that they were inconsistent with the witness' story. It may be noted that counsel's request was timely, and confined to notes made by the witness himself. The Court, stating that "in general, notes not used for the immediate memory refreshment at the time of giving testimony are not made available to the other side," stated that he intended to sustain the objection.

Counsel for the defendant stressed his desire to see the notes, contending that the witness could not have an independent recollection of "a series of meetings with this defendant over a period of two months."

After discussion, the Court announced he would inspect the notes *in camera,* stating "I will take a look at them now privately and see if they are such that they would be either capable of some potential worth to you or capable of some injustice being worked by their divulgence."

Government counsel then stated:

"May I inquire as to the procedure, your Honor? I wouldn't want these notes, in case the Court decided they were not available to the defendant, to be a matter of public record in the exhibits.

"The Court: That is the purpose of an *in camera* inspection.

"Government counsel: They are not made an exhibit at that time?

"The Court: No, they are not. They are not even marked for identification. The witness hands them to the Judge and the Judge sits here on the bench and looks at them and hands them back to the witness. * * * The purpose of the *in camera* inspection is to let them come to the Court only for his private scrutiny."

Thereafter, certain documents, including the witness' notes, were handed to the Court.

During the noon recess, the Court examined the file and when court resumed the following proceedings took place in the presence but out of the hearing of the jury:

"The Court: The Court has made its *in camera* inspection of the agent's file. The file consists in part of copies of the reports which were sent to the investigating agency. It consists in part of other documents which bear no relation, no apparent relation to this immediate case, but which are of the class of thing which investigative agencies have where they are suspecting many persons or

even investigating the multifarious activities of one or more of these people.

"The file does not disclose inconsistencies with what the witness testified to here, although it does not affirmatively show all of the things in the same detail they have been brought forth here.

\*    \*    \*    \*    \*    \*

"Insofar as it shows the identity of the informant you have already shown that you know who the informant was and have asked the witness, and the witness has verified in that regard.

"I think there is no legal reason why we should and there is every practical reason why we should not order the government to make it available for inspection by defense counsel."

Then, in the presence and hearing of the jury, the Court said, "I will return your file to you, Mr. Farrington."

The troublesome question as to the proper standard to be used in judging the action of a trial court where, as here, the case has been tried prior to the Jencks decision but comes before the appellate court after the Jencks decision, has arisen in several cases.

The problem was apparently first submitted to a Circuit Court in United States v. Miller, 2 Cir., 248 F.2d 163, 164, decided October 1, 1957. In a per curiam decision denying a petition for rehearing the Court of Appeals pointed out that the trial court, at defense counsel's request, examined two statements made by the witness Mishel to determine whether counsel was entitled to use them in cross-examination. Use of one of the statements was denied because the trial court found that it contained not only matter "unrelated to this case" but nothing materially inconsistent with Mishel's testimony. This statement was placed in a sealed envelope and filed with the Clerk of the Court, but by stipulation between appellant and appellee was excluded from

the record on appeal. The Court said that it would assume that the District Court's failure to deliver the statement to defense counsel with the extraneous matter excised was an error,

"\*    \*    \* but we cannot determine whether or not it was a prejudicial error, because the exhibit has by stipulation been excluded from the record on appeal. Since we cannot know that failure to deliver the statement, properly excised, was prejudicial to the defendant, we do not think a new trial should be ordered."

In the present case, no such stipulation was involved; the notes in question, in the words of the trial court, were "not even marked for identification." The effect attributed to the stipulation by the Court in Miller admits of conflicting inferences, but we regard the matter of the stipulation as an essential element to the holding in that case, and thus find it inapplicable here. For all that appears, appellant's counsel in this case did nothing less than the trial counsel in Jencks, where the Supreme Court said [353 U.S. 657, 77 S.Ct. 1013]:

"We hold, further, that the petitioner is entitled to inspect the reports to decide whether to use them in his defense. Because only the defense is adequately equipped to determine the effective use for purpose of discrediting the Government's witness and thereby furthering the accused's defense, the defense must initially be entitled to see them to determine what use may be made of them. Justice requires no less."

In both Lohman v. United States, 6 Cir., 1958, 251 F.2d 951, and Bergman v. United States, 6 Cir., 1958, 253 F.2d 933, the Sixth Circuit, in opinions by Judge, now Mr. Justice Stewart, reversed convictions on the Jencks ground. And in United States v. Prince, 3 Cir., 1959, 264 F.2d 850, where the trial occurred subsequent to both the Jencks decision and the so-called Jencks Act, 18 U.S.C.A. § 3500, the same result was reached.

In Lohman, where trial occurred prior to the Jencks decision, a witness testified that he had made a written report to the FBI within a day or two after a certain meeting. The trial court denied defense counsel's motion that the report be produced. On appeal, the Court of Appeals held that under the Jencks rule refusal to grant the motion was prejudicial error. The Court stated [251 F.2d 953]:

"The district court was without the benefit of the Jencks ruling at the time of the trial. But this court must, of course, apply the law as it is when a judgment is reviewed, not the law as it was when the judgment was entered."

In Bergman, the trial court adopted the view that a statement desired would not be made available to counsel if the witness had not used it to refresh his recollection, but would be examined by the trial court to see whether the contents were inconsistent with the witness' testimony, and if so would be made available to counsel, but otherwise not. It is apparent that the trial court followed the same procedure in the instant case. After pointing out that such procedure was expressly disapproved in Jencks, the Court in Bergman continued [253 F.2d 935]:

"In the light of the Jencks decision, the failure of the district court to make [the] prior statement available to the defense requires that the judgments be set aside. We reach this conclusion with reluctance in view of the likelihood that the failure to make [the] statement available actually worked no prejudice to the defendants, and in view of the generally conscientious and fair conduct of the long and complicated trial by the district judge."

Rosenberg v. United States, 1959, 360 U.S. 367, 79 S.Ct. 1231, 3 L.Ed.2d 1304 is one of the first cases in which the Supreme Court has been called upon to interpret the statute, 18 U.S.C.A. § 3500; see Palermo v. United States, 1959, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287.

In Rosenberg, the trial court refused to allow the defendant to examine a letter written by a witness to the United States Attorney before the trial. The case was tried in the District Court, 157 F.Supp. 654, after the passage of § 3500 and the letter in question, in accordance with the provisions of that section, was preserved in the record on appeal. The Court of Appeals, 3 Cir., 257 F.2d 760, held it was error not to have given the letter in question to counsel for examination, but after examining the letter, the Court held that counsel had at the time of the trial the same information contained in the letter and therefore the failure to allow defendant's counsel to examine it at the time of trial was of no consequence.

The Supreme Court affirmed by a 5 to 4 majority, saying [360 U.S. 367, 79 S.Ct. 1234]:

"An appellate court should not confidently guess what defendant's attorney might have found useful for impeachment purposes in withheld documents to which the defense is entitled. However, when the very same information was possessed by defendant's counsel as would have been available were error not committed, it would offend common sense and the fair administration of justice to order a new trial. There is such a thing as harmless error and this clearly was such."

Although disagreeing with respect to the specific application of the harmless error doctrine under the facts of the case, the four dissenting Justices indicated that in a proper case such a standard may be applied:

"Although we need not go so far as those courts which have suggested that the harmless error doctrine can never apply as to statements producible under the statute, see Bergman v. United States, 6 Cir., 253 F.2d 933; United States v. Prince, 3 Cir., 264 F.2d 850, fidelity to the principle underlying Jencks and the Jencks statute requires, I think, that when the defense has

been denied a statement producible under the statute, an appellate court should order a new trial unless the circumstances justify the conclusion that a finding that such a denial was harmful error would be clearly erroneous."

We, unlike the Supreme Court in Rosenberg, do not have the notes before us, and are unable to characterize the error as harmless.

The trial in the instant case having occurred before the Jencks statute, there were no procedures set up for counsel to preserve the notes in question for examination by a reviewing court. As shown above, the District Court in outlining the procedure to be followed concerning the notes, stated they were not to be made an exhibit. He said further, "They are not even marked for identification."

We apply the Jencks case, not the statute. Lohman v. United States, supra. In Rosenberg, the Supreme Court was considering application of the statute. Even assuming, so far as the case here is concerned, that the same standards are applicable in either case and that it would be permissible to apply the harmless error doctrine, we cannot say that failure to turn the notes over to appellant's counsel was not prejudicial or that it constituted harmless error.[1]

The testimony of the witness Farrington was not merely incidental to the government's case or collateral to the principal question. He was intimately concerned with the events constituting the offenses charged, and was the one who made the purchases of the narcotics appellant was convicted of selling. It is as true here as it was in Jencks that—

"The crucial nature of the testimony * * * to the Government's case is conspicuously apparent. The impeachment of that testimony was singularly important to the petitioner." Jencks v. United States, supra, 353 U.S. at page 667, 77 S.Ct. at page 1012.

 We are reluctant to reverse a case where the District Court followed a procedure which was then widely followed and where, as the Government in its brief points out, the evidence of guilt was substantial, but we are satisfied, after careful consideration, that under the rule of Jencks the refusal to permit the inspection of the notes under the circumstances of this case was error calling for reversal, and we must act accordingly. Upon a retrial the procedures set out in Title 18 Section 3500 will be followed.

The judgment is reversed.

---

1. The parties discuss three other cases from this circuit on the Jencks question. Rodgers v. United States, 9 Cir., 1959, 267 F.2d 79; Wagner v. United States, 9 Cir., 1959, 264 F.2d 524; Rios v. United States, 9 Cir., 1958, 256 F.2d 173.