**UNITED STATES**

v.

**Joel ROSENBERG.**

**Cr. No. 18582.**

United States District Court
E. D. Pennsylvania.
Nov. 23, 1956.

W. Wilson White, U. S. Atty., Robert W. Lees, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Alexander Osinoff, Stanley B. Singer, Philadelphia, Pa., Anthony J. Albert, Santa Fe, N. M., for defendant.

VAN DUSEN, District Judge.

Defendant's motions for new trial and judgment of acquittal have been filed following a jury's verdict of guilty on both counts of the indictment. The first count charged the defendant with conspiring, in violation of 18 U.S.C.A. § 371, with C. K. Meierdiercks and an unknown individual (hereinafter called Mr. Rice, which name he used in dealing with the victim, Miss Vossler) to transport in interstate commerce securities or money having a value of $5,000 or more, knowing the same to have been taken by fraud in violation of 18 U.S.C.A. § 2314. The second count charged the defendant with the substantive offense of transporting, with fraudulent intent, from Philadelphia to Washington, D. C., a fraudulently obtained certified check having a value of $5,760 in violation of 18 U.S.C.A. § 2314.

Ample evidence [1] was introduced at the trial to justify a finding by the jury

---

1. The Circuit Court of Appeals for the Third Circuit has recently emphasized that, after a guilty verdict, the facts must be considered in the light most favorable to the Government. See United States v. Migliorino, 3 Cir., 237 F.2d 7.

that in mid-January 1955 defendant had conspired with Mr. Meierdiercks and Mr. Rice to falsely and fraudulently obtain the certified check endorsed in blank from the victim, Miss Vossler, in Philadelphia and that the defendant had taken it to Washington, D. C., where it was cashed. The testimony disclosed that, acting at the suggestion and direction of defendant, Messrs. Meierdiercks and Rice falsely represented to Miss Vossler on separate visits that they were representatives of oil companies seeking to purchase her oil leases in order to persuade her of a false high value for these leases. As part of this plan, Mr. Meierdiercks agreed to buy the leases for $57,600 if she would agree to pay him in advance $5,760 for federal taxes, to be paid by his oil company, in order to relieve her of federal income taxes on her capital gain. The certified check endorsed in blank for $5,760 was delivered by Miss Vossler to Mr. Meierdiercks in Philadelphia and the latter delivered it to defendant, who took it to Washington, D. C.,[2] where it was cashed.

Mr. Meierdiercks was arrested for this offense in late January 1955 and pled not guilty. In April 1955 he gave F. B. I. agents a statement which he alleges is a full description of the transaction. Subsequently, he entered a plea of guilty and, on July 8, 1955, he was sentenced to a three-year prison term which he was serving at the time of the trial. Mr. Rosenberg was indicted on November 16, 1955, and entered his not guilty plea on November 28, 1955.

I. Alleged error in permitting jury to be informed of guilty plea of co-conspirator by opening argument of Government attorney and testimony of such co-conspirator, even though no objection was made to such argument and testimony and defendant requested the judge specifically to charge that co-conspirator is "presently serving a jail term for committing the offense with which this defendant is charged." (Paragraphs 5, as amended on 11/14/56, and 14 of Motions.)

The principal witness for the prosecution was Mr. Meierdiercks, whose testimony covers 100 pages of the notes of testimony[3] out of approximately 300 pages (estimated) required to transcribe the testimony given from the witness stand. The reasons why Mr. Meierdiercks, in April 1955, changed the uncooperative attitude he displayed to the F. B. I. agents at the time of, and immediately after, his arrest in late January 1955 and thereafter entered his guilty plea were covered fully on cross-examination.[4] The able, conscientious and experienced counsel for defendant based the defense primarily on tearing down Mr. Meierdiercks' testimony concerning defendant and his credibility.[5] Defendant's opening speech concluded with this sentence:

"Now, you and I have to listen and judge whether the man's telling the truth or not, and that's about the case."[6]

2. The evidence indicated that Mr. Rice drove defendant's car to Philadelphia and that defendant (with or without Mr. Rice) drove from Philadelphia to Washington, D. C.

3. N. T. 22 to 60 on direct examination and N. T. 61–83, 104–120, 149–153 and 315–334 on cross-examination.

4. See N. T. 73, 328–9, 330–2. Mr. Meierdiercks testified that he decided to make a full disclosure and change his plea to guilty in order to terminate the publicity being given to the charges against him which was "hurting (his) loved ones." (N. T. 73).

5. Unless there was more evidence available than that produced at the trial (the defendant did not take the stand), the defense presented was the only one available. Defendant's counsel went to great lengths (though not successfully in every case) to show that Mr. Meierdiercks had been involved in similar fraudulent schemes in the past. See testimony of Mr. Martin (N. T. 198–205) and Mrs. Jones (N. T. 346–365).

6. N. T. 19–20. Defendant's counsel said just before this, at N. T. 19:
"I doubt if anybody ever saw Mr. Rosenberg, and as the case proceeds, I think if you watch close between the

Defendant's closing speech was principally devoted to an attack on Mr. Meierdiercks,[7] including language such as:

"This man is the most unmitigated liar I have ever seen. He is not worthy of believe under oath. How a man could figure a thing like this out—and he had 3 months in jail to do it."

In order to obtain a favorable verdict, defendant tried at the trial to persuade the jury that the co-conspirator's change of plea from not guilty to guilty resulted from a government promise of leniency if he testified against defendant (e. g., N.T. 327–332) and that the co-conspirator hoped to secure early parole as a result of his testimony (e. g., N.T. 333–336). After this strategy proved unsuccessful, defendant has secured additional counsel (not present at the trial) to argue that such a course followed by the experienced and able trial counsel was reversible error.

Under these circumstances, the cases[8] relied on by defendant's additional counsel (who appeared for the first time at the argument on the motion for new trial), holding that it is reversible error to refer in the charge to the guilty plea of a co-conspirator and state that the jury may consider it in reaching their verdict, are inapplicable to this record. The charge does not mention this guilty plea even though defendant's counsel requested the court to charge that defendant is "presently serving a jail term for committing the offense with which this defendant is charged."[9] On at least three occasions the court instructed the jury that their verdict was to be based only on the testimony coming from the witness stand and the exhibits in the light of the court's charge, so that three sentences in the middle of a 12-page opening argument could hardly have been very significant in the jury's deliberations five days later.[10] Also, the

---

lines I think you will find that there must be a purpose why Meierdiercks picked out Rosenberg. Why didn't he pick you or I as his accomplice, this great master mind."

7. Since counsel did not order the court reporter to transcribe their closing arguments, the trial judge asked that references in defendant's argument to Mr. Meierdiercks be reproduced and 3½ pages of such references have been placed in the file.

8. United States v. Toner, 3 Cir., 1949, 173 F.2d 140, 142; United States v. Hall, 2 Cir., 1950, 178 F.2d 853; and Leroy v. Government of Canal Zone, 5 Cir., 1936, 81 F.2d 914; but cf. such cases as Grunberg v. United States, 1 Cir., 1906, 145 F. 81, 86, and United States v. Rollnick, 2 Cir., 1937, 91 F.2d 911, 917; see, also, 48 A.L.R.2d 1004 & 1016. The language used by the court in Payton v. United States, 1955, 96 U.S.App. D.C. 1, 222 F.2d 794, must be read in the light of the very different facts of that case, which involved defense counsel unfamiliar with court practice, physical harm to the defendant prior to his confession, as well as language in the charge calling attention to a guilty plea of a co-conspirator, which plea was taken in the presence of the jury. The additional counsel for defendant incorrectly stated

in his argument (pp. 14–16 of N. T. of 10/5/56) and in his brief (page 2) that defendant could not be innocent if Meierdiercks was guilty of the same offense. He overlooks that the testimony established that there was another conspirator, Mr. Rice, so that a conspiracy could have existed between defendant and Mr. Rice or between Mr. Meierdiercks and Mr. Rice, and defendant and Mr. Meierdiercks were not the only two possible conspirators.

9. Paragraph 1 of defendant's requests for charge reads:
"The testimony of Charles Kenneth Meierdiercks, who you must keep in mind is a convicted criminal presently serving a jail term for committing the offense with which this defendant is charged, must be viewed with the greatest care and utmost of caution. Before giving it any weight, you must remember that it comes from a corrupt source, the mouth of a convicted felon."
At the conclusion of the charge and before the jury withdrew, both counsel said they had no objection to the charge (N. T. 407).

10. Defendant now objects to Government counsel mentioning in his opening statement that Mr. Meierdiercks plead guilty in spite of the language used in defendant's opening statement (see above, including footnote 4) and of all the testi-

court emphasized that the co-conspirator's testimony had to be scrutinized and acted upon with caution and care for three separate reasons.[11]

Cases such as Walker v. United States, 8 Cir., 1937, 93 F.2d 383, 395,[12] Nigro v. United States, 8 Cir., 1941, 117 F.2d 624, 632, 113 A.L.R. 1128, and Stewart v. United States, 9 Cir., 1914, 211 F. 41, 48, state that where the co-conspirator testifies fully as to his part in the transaction, it is not error for the jury to know of his guilty plea. This principle in these cases seems applicable to this record. In this respect, the record does not contain the "plain error" contemplated by F.R.Crim.P. 52(b), 18 U.S.C.A.

II. Alleged denial of right to effective assistance of counsel (Paragraph 1 of Motions).

At the start of the trial, defendant's counsel moved for a continuance on the ground that they had just learned that one of the witnesses (Mr. Gorman), who had helped with the preparation of their cases, was a "government informer." [13] Defendant produced no evidence to substantiate this claim

mony brought out on cross-examination by this co-conspirator. It is noted that immediately after the opening statements, the court cautioned that "every case * * * is different * * *. This case stands on its own feet or basis * * *." (N. T. 21.) It is also noted that, although defendant objected on June 11 to prejudice resulting from the overall effect, in emphasizing the guilt of the co-conspirator, of the Government's opening statement on June 8, defendant specifically did not want a juror withdrawn at that time (N. T. 99–100).

11. The charge contained this language at N. T. 393–4:

"In connection with Mr. Meierdiercks' testimony, I want to mention three factors that are in addition to the general considerations governing any witness which I have just covered. First, he has committed at least one felony, grand larceny, in 1931, as I remember the testimony. The testimony of a witness who has committed such a felony must be scrutinized with caution and care.

"Second, the fact that he may be paroled by the prison authorities may be considered by you in determining whether he would believe it was to his interest to favor the Government. That is a proper consideration.

"Finally, he alleges and admits that he was an accomplice in aiding and abetting the defendant to commit the crime for which the defendant is charged here. And the testimony of an accomplice should be carefully scrutinized by the jury, and the jury should only act upon it with caution and care.

"After considering these three factors, if under all of the circumstances, and from the impression made by Mr. Meierdiercks on the stand, the jury is of the opinion that he was telling the truth about this case, or any part of it, the jury should give the testimony of this witness such weight as they believe it ought to have."

12. The court used this language in the Walker case, 93 F.2d at page 395:

"It appears that the defendants Mears and Albright took the stand as witnesses and testified fully as to their part in the transaction. It could therefore scarcely be said to be prejudicial error to have received their pleas of nolo contendere in the presence of the jury."

In the Stewart case, the court said, 211 F. at page 48:

"Moreover, the fact that Goodwin had previously been convicted was brought out on the examination of the defendant himself. In his direct examination, with reference to when he first met Kibbe and Hillpot, the defendant was asked by his counsel:

"'Q. And who was present at the time? A. Goodwin was present at the time. Q. That was John B. Goodwin? A. Yes, sir. Q. Is that the same Goodwin who was convicted for the killing of Alfred Hillpot? A. Yes, sir.'

"Under such circumstances, we do not think the court would be justified in holding that the fact disclosed by the District Attorney, presumptively already known to the jury, although involving a grave impropriety, was such as to necessarily work prejudicial harm to the defendant's cause."

It is noted that the Court of Appeals for the Third Circuit has recently upheld a conviction for conspiracy with testimony of an accomplice whose guilty plea was brought out in the presence of the jury. See United States v. Migliorino, supra, at footnote 1.

13. The notes of testimony read as follows at page 3:

"(Side bar discussion on the record as follows:

and the motion was denied.[14] On October 5, 1956, at the argument on the motion for new trial,[15] counsel for defendant offered to take the witness stand in order to prove their contention that Mr. Gorman's conduct had prevented their client from having the effective assistance of counsel. The trial judge granted the parties leave to file affidavits on the subject.[16] Such affidavits, filed on November 5, 1956, and the testimony show that Mr. Gorman introduced defendant to his counsel in the fall of 1955; that at defendant's request he undertook to assist in the preparation of the defense; and assisted defendant in the procurement of witnesses as late as June 3, 1956, and in obtaining information; that he did not disclose any conversations he heard with defendant and his counsel to the Government representatives; that he came to Philadelphia on June 4, 1956, to discuss the case with the Assistant United States Attorney handling the matter at the latter's request; that defendant knew that he had received Mr. Meierdiercks' "share of the proceeds from defendant as I testified at the trial of the case;" and that he was not induced by threat or promise of reward from the Government representatives to meet with defendant and his counsel. Mr. Gorman's affidavit makes clear that his discussions with both defendant's counsel and Government counsel were restricted to developing the facts as he knew them and he was not compensated by either party. There is no proof whatever that Mr. Gorman was a Government informer or that he discussed this case with the Government representatives assigned to its prosecution until after his last meeting with defendant and his attorney on June 3, 1956. See United States v. Lebron, 2 Cir., 1955, 222 F.2d 531, 534–535, where defense counsel failed to prove a similar contention even though a Government agent was involved.[17] Defend-

"The Court: The defendant makes a motion for a continuance on the ground that a gentleman named Harry Gorman had been present in their conferences with the defendant at which all preparations for this trial had been made, and that now they have reason to believe that he has disclosed to the Government all that was discussed in these conferences.

"Mr. Singer: In fact, Harry Gorman actively participated in the preparation of the defense. The individual supplied certain informations which were relied on, and prepared our case accordingly, and now it places us in an embarrassing position of relying on information that is received from a Government informer.

"The Court: We don't know that he is a Government informer. That hasn't been proved."

14. The trial judge had previously granted defendant's motion that this witness should not be in the courtroom when the Government's principal witness, Mr. Meierdiercks, testified. On the third day of the trial, defendant notified the court that Mr. Meierdiercks had been talking to Mr. Gorman in the hall. This talk, such as it may have been, was beyond the control of counsel or the court and beyond the scope of defendant's motion. Without further evidence of its length or subject matter, it would seem clearly to be no ground for a new trial. (See paragraph 14 of defendant's Motions.) The trial judge also complied with defendant's request to have Mr. Meierdiercks removed from the courtroom while Mr. Gorman was testifying (N. T. 280).

15. This argument was postponed from the July date suggested by the court until October, at the request of counsel for defendant.

16. See N. T. 5–8 of 10/5/56, where the court emphasized at N. T. 8 that the affidavit should contain "all the facts." It is noted that the affidavits of Messrs. Singer and Osinoff contain hearsay statements that they have been advised of certain things. Such statements not made on the personal knowledge of the deponents cannot be considered, particularly where the informant was stated to be in one case, and would appear to be in Mr. Osinoff's affidavit, the defendant, who did not testify at his trial. To the extent that the last paragraph of Mr. Singer's affidavit has been contradicted by Mr. Gorman's affidavit, it has not been accepted as sustaining the burden of proof which rests on the defendant in this matter, particularly in view of the fact that counsel for defendant did not offer to produce this evidence at the trial.

17. Cases relied on by defendant, such as United States v. Venuto, 3 Cir., 1950, 182 F.2d 519, Coplon v. United States,

ant's contention rests solely upon inferences and suspicions which are rebutted by the affidavits of Mr. Gorman and Special Agent Murphy.

III. Alleged error in permitting reference to oil leases (Paragraphs 9 and 15 of Motions).

██ The trial judge ruled that the fact that defendant had admitted on another occasion that he had been in the oil lease business in the 1930's was relevant, since the fraudulent scheme involved indicated that the originator of this scheme must have had some knowledge of this business.[18] Subsequently, the Government introduced uncontradicted testimony showing that this defendant was arrested after issuance of a warrant for his arrest and that, during the course of, and incidental to, the arrest, the Government agents took into custody "a group of papers which Mr. Rosenberg stated were oil lease contracts" (N.T. 308). At the beginning of the testimony concerning defendant's arrest, his counsel objected that an unreasonable search and seizure had taken place at that time and none of the items taken at the time of the arrest were allowed to be shown to the jury. Defendant now objects that reference was made to items found in defendant's hotel room at the time of his arrest.[19] In addition to the fact that no such objection was made to the reference to the items when the testimony was given, the search was fairly incidental to the arrest, which was made pursuant to a warrant. Under these circumstances, the testimony concerning these documents is no basis for a new trial. See

United States v. Petti, 2 Cir., 1948, 168 F.2d 221, 223, and cases there cited.[20]

IV. Alleged error in refusing defendant permission to examine statements given by Mr. Meierdiercks to F. B. I.

██ The defendant had counsel when he entered his not guilty plea in November 1955. This case appeared on the Criminal Jury Trial List of this court for the periods commencing April 2 and June 4, 1956. The list for the period commencing June 4, 1956, was sent to counsel for defendant on or about May 10, 1956.[21] It was not until May 24, 1956, that defendant filed a motion under F.R.Crim.P. 6(e) and 16 for examination of the testimony given by Mr. Meierdiercks before the Grand Jury in November 1955 and of the statements given by him to representatives of the F. B. I. After consideration of oral argument and briefs, the trial judge denied this motion by order of May 31, 1956, which has attached to it in footnotes the reasons for the action taken. At the time of this ruling in May 1956, the trial judge notified counsel for defendant that he could ask for the production of the testimony given before the Grand Jury and the statements at the trial and that the trial judge would examine them *in camera* to see if they had impeachment value, even though the Government refused to deliver them to the defendant for his inspection and even though the defendant was unable to prove that the contents of the Grand Jury testimony and of the statements were inconsistent with the testimony

1951, 89 U.S.App.D.C. 103, 191 F.2d 749, 757–760, and Caldwell v. United States, 1953, 205 F.2d 879, 92 U.S.App.D.C. 355, are inapplicable on their facts to the record in this case.

18. Prior conduct is admissible as evidence of a design or plan. See II Wigmore on Evidence, 3d Ed., § 237 ff.

19. Counsel for defendant also brought out on cross-examination that there was money seized at the time of the arrest. It was later stated on direct examination, without objection from defendant,

that this was new money and the defendant's counsel brought this out again on cross-examination. The F. B. I. agent made clear to the jury that he did not know whether this money had anything to do with this case or not (N. T. 313).

20. This case indicates that the documents themselves could have been admitted into evidence and exhibited to the jury.

21. Several of the facts stated in the first two sentences of this paragraph are contained in an affidavit filed November 13, 1956.

that Mr. Meierdiercks gave at the trial. Defendant was unable to show that there was any inconsistency between Mr. Meierdiercks' testimony on the stand and the statements he made to the Grand Jury and to the F. B. I. agents.[22] Under such circumstances, the defendant had no right to see the statements or the Grand Jury testimony under the federal court decisions. Gordon v. United States, 1953, 344 U.S. 414, 73 S.Ct. 369, 97 L.Ed. 447; Scanlon v. United States, 1 Cir., 1955, 223 F.2d 382; Jencks v. United States, 5 Cir., 1955, 226 F.2d 540; and cases cited in those cases.[23]

▪ However, at the conclusion of the first day of the testimony, the trial judge was furnished the transcript of the Grand Jury proceedings (C–1) and the statement of Mr. Meierdiercks (C–2), which are in sealed envelopes in the file, available for consideration by the appellate courts. At the beginning of the second day of trial, the trial judge reported to counsel that the statements were, if anything, more favorable to the Government than Mr. Meierdiercks' testimony, but they did not cover one point covered in his testimony—namely, they did not contain the information that Mr.

Meierdiercks overheard certain phone calls from the defendant to Miss Vossler. Defendant's counsel questioned Mr. Meierdiercks on this and the court told the jury that he had not covered this point in his testimony before the Grand Jury. This procedure was more favorable treatment than the defendant was entitled to under the decisions cited in the preceding paragraph and was in accordance with that suggested by the decisions of the Circuit Court of Appeals for the Third Circuit and the Second Circuit. See Reynolds v. United States, 3 Cir., 1951, 192 F.2d 987, 997–998, reversed on other grounds in opinion stating that this procedure is applicable in a criminal case, 1953, 345 U.S. 1, 12, 73 S.Ct. 528, 97 L.Ed. 727; United States v. Lebron, 2 Cir., 1955, 222 F.2d 531, 536–537; cf. also, United States v. Mesarosh, D.C.W. D.Pa.1953, 116 F.Supp. 345.

The other reasons for new trial advanced by defendant have no merit.[24]

The defendant was represented by able counsel, who worked diligently on his behalf, and he had a fair trial (see N. T. 16–17 of Record of 10/5/56).

Defendant's motion for judgment of acquittal or for new trial is denied.

22. On cross-examination by Mr. Osinoff, the witness said at N. T. 70:
"I said the subject and the timing was the same, yes, sir, identically the same. The names were the same. People involved, the scheme, the actual fraud, everything was the same."

23. These cases hold that the defendant must show that the previous statements were contradictory to those made at the trial and that the contradiction concerned relevant, important and material matters.

24. For example, there is no reason to believe that Mr. Meierdiercks' claim of privilege did not relate to a violation of a section of the federal criminal code, such as 18 U.S.C.A. § 2314. The restriction of cross-examination of a witness to significant matter when it is beyond the subject of the direct examination, as held in Commonwealth v. Petrillo, 1941, 341 Pa. 209, 223–224, 19 A.2d 288, referred to by the trial judge, is also followed by the federal courts. See United States v. Klass, 3 Cir., 1948, 166 F.2d 373, 376; United States v. Lawinski, 7 Cir., 1952, 195 F.2d 1, 4 ff; Cwach v. United States, 8 Cir., 1954, 212 F.2d 520, 530 ff. The only times that the trial judge has been able to find that a motion was made for the withdrawal of a juror, the record did not justify such action.* There was no prejudice in the rulings of the court concerning the admissibility of evidence, even though such rulings were erroneous. See Nicola v. United States, 3 Cir., 1934, 72 F.2d 780.

* N. T. 229, 260, 338.