UNITED STATES of America
v.
Joel ROSENBERG.
Cr. No. 18582.

United States District Court
E. D. Pennsylvania.
Jan. 3, 1958.

Louis C. Bechtle, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Stanley B. Singer, Philadelphia, Pa., for defendant.

VAN DUSEN, District Judge.

The factual background of this case is summarized on the first three pages of

the opinion filed November 23, 1956.[1] A new trial was ordered on June 26, 1957, by the United States Court of Appeals for the Third Circuit for failure of the undersigned trial judge to comply with the requirements of the opinion of the Supreme Court of the United States in Jencks v. United States, 1957, 353 U.S. 657, 77 S.Ct. 1007, 1 L.Ed.2d 1103.[2] At this new trial, lasting from October 1 to October 7, 1957, substantially the same evidence was produced as that introduced at the former trial and the second jury also returned a verdict of guilty on both counts of the indictment. The case now comes before the court on defendant's motion for new trial and for the entry of judgment of acquittal, filed October 11, 1957.[3]

I. Alleged denial to defendant of his right to the effective assistance of counsel of his choice.

The defendant was represented by three lawyers [4] prior to the time of filing of his Reply Brief on his second appeal to the United States Court of Appeals for the Third Circuit on June 6, 1957, when the name of Edward M. Dangel, Esq. (together with those of Mr. Singer and Mr. Dangel's associate, Mr. Sherry) first appears on any document in the files of any court in this matter.[5] Mr. Singer was clearly the most active lawyer on behalf of the defendant from the time he entered his appearance in May 1956 until October 1, 1957, when the application for continuance of the second trial was made on the ground that defendant was entitled to have Mr. Dangel, who was then ill, represent him at this trial. He not only participated actively in the first trial as assistant to Mr. Osinoff, who acted as chief trial counsel, but also ably argued several motions before the trial judge, including the Motion for New Trial, signed both Notices of Appeal, and his name appears on all briefs filed for defendant in the United States Court of Appeals for the Third Circuit.

The first evidence in this court of any connection of Messrs. Dangel and Sherry with this case is the appearance of their signatures, together with that of Mr. Singer, on three pre-trial motions filed August 30, 1957, which was one week after notice that the case was listed for trial was sent to Messrs. Singer and Dangel

---

1. The second two sentences of that opinion, which is reported at D.C., 146 F. Supp. 555, 556, state:

 "The first count charged the defendant with conspiring, in violation of 18 U.S.C.A. § 371, with C. K. Meierdiercks and an unknown individual (hereinafter called Mr. Rice, which name he used in dealing with the victim, Miss Vossler) to transport in interstate commerce securities or money having a total value of $5,000 or more, knowing the same to have been taken by fraud in violation of 18 U.S.C.A. § 2314. The second count charged the defendant with the substantive offense of transporting, with fraudulent intent, from Philadelphia to Washington, D. C., a fraudulently obtained certified check having a value of $5,760 in violation of 18 U.S.C.A. § 2314."

2. See 146 F.Supp. 562, citing, among other cases, the decision of the United States Court of Appeals for the Fifth Circuit in the above-mentioned Jencks case (226 F.2d 540), which was subsequently reversed by the Supreme Court of the United States.

3. The letter of December 9 to counsel (attached as Annex D) explains the reason for the date of filing this Memorandum Opinion and Order. No action could be taken on the subject of this Motion denied by this Order until defendant had filed his Withdrawal of Motion for Leave to Take Depositions Under Rule 15 (Document No. 67 in Clerk's file), which he had indicated would be filed at the argument on October 30, 1957 (N. T. 34–38), but which was not filed until 12/5/57.

4. These lawyers are Alexander Osinoff, Esq., Stanley B. Singer, Esq., and Anthony Albert, Esq. See Annex A to this Memorandum Opinion for a summary of the activities of these three lawyers on behalf of this defendant.

5. Mr. Dangel participated in the oral argument in that court on June 11, but, as stated below, no judge of this court had ever heard of his connection with this matter until October 1, 1957, except for his name on certain papers filed 8/30/57 and thereafter.

(see Exhibit C–3).[6] Neither of them have ever entered their appearance for defendant in this court and no other document bearing their signatures appears in the file prior to the October 1957 trial. Mr. Singer argued for the defendant in support of three pre-trial motions before this court on September 18, 1957 (see Document No. 51 in Clerk's file). Mr. Singer was present on behalf of the defendant at 10 a. m. on September 30, when the list was called, and the case was marked ready for trial without his objection and without his making any statement that he was not going to try the case or that the defendant's trial attorney was ill.[7] On the morning of October 1, 1957, for the first time, the court was notified that (a) Mr. Dangel was to be chief counsel for the defendant at this trial, which had been scheduled since August 23, 1957, (b) he was ill and being committed to the hospital on October 2 [8] for surgery, (c) he had "part of the files in his possession," and (d) defendant applied for a continuance on these grounds.[9] Mr. Singer, as counsel for the defendant, was told to make the application for a continuance to the judge to whom the case was assigned for trial. As soon as the trial judge completed the case he was then trying (approximately noon), Mr. Singer made his application for continuance and the facts concerning Mr. Dangel's illness presented to the undersigned were:[10]

(1) Mr. Dangel had been aware of his illness since September 5 or 6 and had been advised, no later than September 27, that an operation would be necessary.

6. This notice, as is the practice in our court, was set out by the United States Attorney's office and the fact that a copy was sent to Mr. Dangel was not known to the trial judge until the second day of the trial (October 2), when a copy was produced for addition to the record (N. T. 46).

7. See transcript of proceedings at call of this case on September 30, 1957 (Document No. 68–all document numbers are those placed on the documents in the Clerk's file). Mr. Singer indicated to the assignment judge on October 1 that " * * * we did contact him (the trial judge) and made him aware of the statements made in court" (N. T. 2 of Document No. 53). Actually, this case had not been mentioned by either counsel to the trial judge at any time on September 30 or on October 1 until after Mr. Singer made this statement. Mr. Singer told the trial judge's secretary that he wanted to see the trial judge and was informed that the judge was in court hearing another criminal case. Mr. Singer did not approach the trial judge on September 30 either in the courtroom or, after court adjourned, in chambers.

8. Subsequent information given to the trial judge indicated this date was October 3 (compare Exhibit C–4 (letter of Dr. Levine) with affidavit of Dr. Levine referred to in footnote 10). Defendant was actually admitted to the hospital on October 7 (see Amendment to Answer filed 11/29/57, Document No. 65).

9. See pp. 2 and 3 of transcript of proceedings on 10/1/57 before the judge presiding at the September 30 criminal list (Document No. 53).

10. The United States Attorney was asked by the undersigned to call Mr. Dangel's doctor, in the presence of Mr. Singer, to secure facts needed to make clear a brief letter presented by Mr. Singer (Exhibit C–4). These facts were secured from Dr. Levine by phone during the lunch hour and reported to the trial judge in open court at 2 p. m. on October 1 (pp. 5–6 and 13 ff. of Document No. 55). Affidavits of Mr. Dangel and Dr. Levine, filed on 11/8/57, state that it was understood in the summer of 1957 that Mr. Dangel was to try the case at the second trial, that Mr. Singer did not have the opportunity to examine Mr. Dangel's file prior to October 1, 1957, and that Dr. Levine had told Mr. Dangel, on September 29, that he was to be operated on on October 2 (see Document No. 62). However, such affidavits, which are not complete and, hence, misleading (see, for example, Amendment to Answer (Document No. 65) showing Mr. Dangel actually did not enter the hospital until after October 7, which was three days after the jury had reached its verdict), are irrelevant since the facts made available to the trial judge at the time he made his ruling are the relevant facts.

(2) Mr. Dangel knew, no later than September 29, that the operation was scheduled for October 3, 1957. Mr. Dangel would not be "available" for at least 20 days after the operation.

(3) The defendant himself knew of Mr. Dangel's condition at noon on September 29 (pp. 8–9 of Document No. 55).

(4) Mr. Singer had discussed Mr. Dangel's condition with him on September 29 (pp. 5–6 of Document No. 55).

With commendable frankness, Mr. Singer admitted that (a) he had been associated with the case from the beginning, (b) he had done most of the paper work, (c) he had presented approximately half of the argument in support of the Motion for New Trial, and (d) he had been a member of the bar for three years, during which he had handled 100 to 125 criminal cases.[11]

The United States Attorney opposed any continuance with vigor, and these additional facts were clear at that time:

(1) The transactions in question had occurred over 2½ years before and some witnesses at the last trial were already unavailable and the memories of others grew dim.

(2) This was a second trial, of which defendant had had ample notice.

(3) Defendant was delinquent in failing to notify the court and to have his file in court no later than the call of the list on September 30.[12]

(4) Witnesses had been brought a second time from Chicago, Boston and Baltimore for this second trial at considerable expense.

(5) Mr. Singer was a competent attorney of defendant's choice and, particularly in view of the fact that defendant had had several attorneys, he should not be permitted to notify the court, after the call of the list, that one particular attorney was his chief trial attorney and was ill, when this information could have been furnished at the time the list was called on September 30.[13]

■■ The trial judge denied the motion for continuance and defendant claims a denial of his constitutional rights.[14]

The Sixth Amendment to the United States Constitution provides:

"In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

■ The Supreme Court of the United States has made clear that this is a privilege which may be waived by the defendant, provided that there is an intelligent and competent waiver. See Johnson v. Zerbst, 1938, 304 U.S. 458, 464–465, 467–468, 58 S.Ct. 1019, 82 L.Ed.

---

11. Pp. 7–8 and 19 of Document No. 55.

12. Night trains from Boston to Philadelphia are available every Sunday night at about midnight which the defendant could have taken to bring the file and Dr. Levine's letter to Philadelphia so he would have been here by 10 a. m.

13. Pp. 6 and 10–12 of Document No. 55.

14. Cf. Avery v. Alabama, 1940, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377. The trial judge has developed the factual situation before the court on October 1, 1957, when this continuance was first sought, because of his belief that two very important principles are involved:

(a) A defendant should always be permitted to have counsel of his own choice where there is no unreasonable delay in making known to the court both this choice and the fact that the lawyer of his choice cannot be available on the date scheduled for trial.

(b) A trial court must have the power to deny a continuance, particularly at the listing of a case being tried a second time, of which the defendant has had over a month's notice, where the defendant has notice of the unavailability of his counsel at the time of the call of the list and permits the case to be marked for trial without notifying the court. At the call of such a one-week list, the schedule is set up for trial for the balance of the week and, in addition to the reasons stated above, to permit defendants to secure continuances later in the week on grounds available but not made known at the time of the call would clearly result in waste of court and jury time of a court which has a large backlog of undisposed of cases. Cf. Agronofsky v. Pennsylvania Greyhound Lines, 3 Cir., 1957, 248 F.2d 829.

1461, referring to Patton v. United States, 1930, 281 U.S. 276, 297–302, 312–313, 50 S.Ct. 253, 74 L.Ed. 854. The trial judge believes the reasoning of these opinions supports the conclusion of the federal intermediate appellate courts, which have held that a defendant's conduct may prevent his reliance on this privilege when all the facts indicate that he has been unreasonably dilatory in asserting his right to counsel claimed to be his choice as chief trial counsel at the moment of trial, that counsel acting for him is competent, and that any failure in such counsel's opportunity for preparation is due to the fault of the defendant. See Tinkoff v. United States, 7 Cir., 1936, 86 F.2d 868, 876–877; Neufield v. United States, 1941, 73 App.D.C. 174, 118 F.2d 375, 380–384; Moore v. United States, 1955, 95 U.S.App.D.C. 92, 220 F. 2d 198; [15] cf. Kobey v. United States, 9 Cir., 1953, 208 F.2d 583, 592–594. These cases support the refusal of the trial judge to grant a continuance on the record in this case.

 Furthermore, Mr. Singer did an able job for the defendant at this trial and, on review of the trial judge's refusal to grant a continuance, the court is entitled to consider, among other things, the fact that defendant has not been able to show any prejudice resulting from the absence of the lawyer he wished to act as his chief trial counsel.[16] See Neufield v. United States, supra, 118 F.2d at page 384; Tinkoff v. United States, supra, 86 F.2d at page 877.

The cases relied on by defendant are inapplicable in the light of the facts in this case, particularly in view of the facts that (a) the defendant, who is not inexperienced in criminal matters,[17] knew, about noon of the day before the call of the list, of his chief counsel's illness, was given that evening a doctor's letter (Exhibit C–4) [18] stating that such counsel could not participate in the trial and failed to get the letter, or notice of its contents, to his chosen local counsel so that his local counsel remained mute when the case was called and listed for trial on the appointed day;[19] (b) local counsel was experienced in criminal trials and thoroughly familiar with the evidence and background of this relatively uncomplicated case, which had already been tried once; and (c) the record dis-

---

15. The particular significance of this case lies in its reliance on footnote 3 in Diggs v. Welch, 1945, 80 U.S.App.D.C. 5, 148 F.2d 667, at page 670 certiorari denied 1945, 325 U.S. 889, 65 S.Ct. 1576, 89 L. Ed. 2002, where the court adopted, the principle that "For these reasons we think absence of effective representation by counsel must be strictly construed. It must mean representation so lacking in competence that it becomes the duty of the court or the prosecution to observe it and to correct it." This case apparently adopts the above-mentioned language, used in a habeas corpus case, as applicable in a situation where the question of the effective assistance of counsel is raised on appeal from the denial of a motion for new trial.

16. Mr. Singer's failure to have the material in Mr. Dangel's filed by September 30 was solely the fault of defendant and his chosen attorney (see, for example, last paragraph of Dangel affidavit, Document No. 62). Such file could clearly have been brought to Philadelphia on the night train on September 29 or on September 30. The court recognizes that the defendant need not show exact

prejudice. See United States v. Venuto, 3 Cir., 1950, 182 F.2d 519, 522.

17. Among the criminal litigation in which defendant has been involved, there are included the following federal cases which have been reported [see enclosure sent with letter of 1/28/57, attached to this opinion as Annex B, for a more complete statement of the major litigation (in most cases not resulting in convictions sustained on appeal) in which Joel Rosenberg was named as a defendant]: Rosenberg v. United States, 10 Cir., 1941, 120 F.2d 935; United States v. Cohen, 2 Cir., 1944, 145 F.2d 82, certiorari denied 1945, 323 U.S. 799, 65 S. Ct. 553, 89 L.Ed. 637; United States v. Rosenberg, D.C.E.D.Pa.1956, 146 F. Supp. 555, reversed 3 Cir., 1957, 245 F. 2d 870.

18. See page 3 of affidavit of Mr. Dangel (Document No. 62).

19. The record also shows that defendant's chosen local counsel knew of Mr. Dangel's illness and that he might not be able to try the case the day before the call of the list, but did not mention this at the call of the list on September 30. It

closes that local counsel did an able, lawyer-like job for his client in this case.

## II. Alleged restriction of the right of cross-examination.

Defendant contends in his briefs that on November 4, 1957 (N.T. 456–470), the trial judge limited his right of cross-examination of the Government witness Meierdiercks.[20] Meierdiercks' cross-examination had been concluded, the Government had concluded its case, and the defendant was putting on his case when defendant's counsel produced photostatic documents of two sentences (D–18 and D–19) on indictments to which the witness had pled guilty and stated: "We wish to introduce these two indictments * * *."[21] Later, defendant's counsel had marked a photostatic copy of an indictment from the Southern District of Florida (D–20), which was apparently the basis of one of the two sentences. The trial judge ruled that the production of photostatic copies was not the proper way to prove these documents (N.T. 466 and 468). Counsel for defendant also requested permission to recall Meierdiercks to the stand for further cross-examination in order to show, through confronting him with D–18 to D–21, that (a) he had pled guilty in 1955 to criminal charges resulting from the events involved in this trial, and was testifying for the Government in this case solely in order to get a lighter

sentence on the two offenses covered by D–18 and D–19, and (b) his enumeration of his past criminal offenses at this trial was not complete.[22] This request was denied since defendant's counsel had cross-examined Meierdiercks thoroughly for over four hours[23] and he had ample opportunity for cross-examination on both (a) and (b).[24] Furthermore, as to (a), Meierdiercks had already testified that he pled guilty to the indictment against him based on the facts involved in this case in order to get a lighter sentence and to cut down his costs (N.T. 232), defense counsel, in his closing argument, argued to the jury that this witness was testifying in this case to get leniency (N.T. 540–1, 546), and the trial judge instructed the jury that it was proper for them to consider whether his receipt of a three-year sentence in 1955 and the possibility of his being placed on probation might be taken into account in evaluating his testimony as being affected by his possible interest to favor the Government (N.T. 572). See United States v. Migliorino, 3 Cir., 1956, 238 F.2d 7, 11. Under these circumstances, the trial judge had the discretion not to permit the recall of this witness for cross-examination on the morning of the last day of the trial, which was the last day of this jury term and a day on which the defendant and his counsel had requested an early adjournment for religious reasons (N.T. 202–3).[25]

should be noted that defendant never stated any objection to Mr. Singer but only that he wanted Mr. Dangel as his chief trial counsel.

20. See page 10 of defendant's Reply Brief, which is the only reference in the briefs to defendant's vague and expansive claims of such limitations.

21. Apparently, meaning "sentences" as no indictments had been produced at that time. Because of the improper use of the term "indictments" by counsel for defendant, the trial judge made the same error during this discussion. See Line 11 of N. T. 461.

22. N. T. 459, 465. An examination of the record will show that it was most difficult for the trial judge to determine

what defense counsel wished to prove at N. T. 450–470, but the trial judge made clear that Meierdiercks could be recalled as a defense witness (N. T. 463 and 468–70).

23. From 2:15 Wednesday until the jury was excused that day at 5:29 (N. T. 202), and from 10 to 11 on Thursday morning (N. T. 209–243).

24. As pointed out above, the defendant had ample opportunity to get these documents (D–18 to D–20) from Mr. Dangel's file to Mr. Singer on Monday morning, September 30, a day-and-a-half before the trial began.

25. Also, it should be noted that the trial judge ruled that Meierdiercks could be called as a defense witness to show the

III. Denial of alleged right to examine FBI files and Grand Jury minutes prior to the trial and to have lengthy adjournments to examine such statements during the trial.[26]

 The decided cases make clear that a defendant has no right prior to the trial to statements of witnesses taken by the F. B. I. or to a transcript of testimony given before the Grand Jury.[27] See Jencks v. United States, supra; Simms v. United States, D.C.Cir., 248 F.2d 626; United States v. Radio Corp. of America and National Broadcasting Co., D.C.E.D.Pa., 21 F.R.D. 103; United States v. Grossman, D.C.N.J.1957, 154 F.Supp. 813; United States v. Malizia, D.C.S.D.N.Y.1957, 154 F.Supp. 511; United States v. Palermo, D.C.S.D.N.Y. 1957, 21 F.R.D. 11; United States v. Anderson, D.C.E.D.Mo.1957, 154 F.Supp. 374; United States v. Benson, D.C.S.D. N.Y.1957, 20 F.R.D. 602; cf. United States v. Miller, 2 Cir., 1957, 248 F.2d 163, certiorari denied 78 S.Ct. 332; 18 U.S.C.A. § 3500. The opinion of the United States Court of Appeals for the Third Circuit in this case says:

> "The failure of the trial judge to permit counsel for the defendant to inspect *at the trial* the witness' grand jury testimony and statement to the F. B. I., as required by the rule announced in the Jencks case, compels us to grant a new trial." (Emphasis supplied.)

See United States v. Rosenberg, 3 Cir., 1957, 245 F.2d 870, 871. For this reason, defendant's contention that this court had the duty of submitting Meierdiercks' F. B. I. statements and the Grand Jury transcript prior to the trial is rejected.

Meierdiercks was the first witness called by the Government after 4 p. m. on October 1 (N.T. 9). As soon as court adjourned that day (5 p. m.) and prior to the conclusion of the direct examination of this witness, defendant was given C–1 and C–2, being the Grand Jury minutes and a 9¼-page handwritten statement signed by the witness, which documents were the subject of the appellate court's opinion in United States v. Rosenberg, supra (N.T. 34, 39–40).

At the conclusion of the direct testimony of this witness at about 11 a. m. on Wednesday, October 2, defense counsel applied for adjournment of the case until the following morning, even though he had had the previous evening to examine these statements and the testimony of this witness at the previous trial (N.T. 73–8). The court adjourned until 2:15 p. m. on October 2 as a result of this request.[28] Other reports of the FBI (consisting of less than four pages) covering interviews with Meierdiercks were delivered to defense counsel at about 12 noon on October 2 (see Exhibits C–5 to C–7, N.T. 79–91).

The statements of Miss Vossler were given to defense counsel so that they could be examined during a 40-minute recess (N.T. 276–281) and also during the luncheon recess (N.T. 329).

After reviewing the record, the trial judge finds that his actions during the trial were in accordance with the foregoing authorities.[29]

IV. Alleged disqualification of the trial judge for bias or prejudice.

 Defendant's attorneys were notified by letter of August 23 that this

commission of a mail fraud offense in Florida similar to the offense with which the defendant was charged, but counsel for defendant declined this opportunity (N. T. 469–470).

26. Paragraphs 2–6 of Motion for Judgment of Acquittal or Motion for New Trial.

27. See authorities cited in comment on order of May 31, 1956 (Document No. 9).

28. The Grand Jury transcript (C–1) was only 22 pages. This application was made on Wednesday of the last week of this jury's term.

29. In giving counsel for the defendant the Grand Jury transcript and in giving him C–1 and C–2 prior to the close of the direct examination, the trial judge acted more favorably to the defendant than 18 U.S.C.A. § 3500 specifies.

case would be called for trial on September 30. Long before September 20, there was available to them the knowledge that the trial judge was one of four judges of this court assigned to criminal trials that week, but defendant made no oral or written request for the disqualification of the trial judge until after the case had been marked ready for trial at the call of the list on September 30. For the first time, counsel for defendant stated to the assignment judge on the morning of October 1, "We thought * * Judge Van Dusen would not be the proper judge to hear this particular case" (N.T. 4 of Document No. 53).[30] Congress has clearly provided that an affidavit of "personal bias or prejudice * * shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time." 28 U.S.C.A. § 144. No

good cause for failure to file such an affidavit on or before September 20 has been shown and there is no apparent reason why the procedure specified by Congress should not have been followed in this case. It might have been most difficult for the assignment judge to find another judge available to hear the case on the morning of Tuesday, October 1, of the last week of that criminal trial period.

Furthermore, none of the alleged reasons for disqualification stated in defendant's briefs constitute "personal bias or prejudice."[31] In view of the complete treatment of this subject by Judge Madden in United States v. Valenti, D.C.N.J. 1954, 120 F.Supp. 80, it would be repetitious to discuss it further.[32] That opinion makes clear that there is no merit in this contention of the defendant. Cf., also, Glasser v. United States, 1942, 315 U.S. 60, 83, 62 S.Ct. 457, 86 L.Ed. 680.

---

30. Later that day (October 1), counsel for defendant raised this point before the trial judge (N. T. 35-9) at the conclusion of the first day of the trial. At that time, counsel stated that the trial judge had used language at the time defendant was sentenced in February 1957 indicating defendant employed legal tricks (N. T. 35-6). The trial judge has had the notes taken by the reporter at this sentencing transcribed (Document No. 69) and the transcript shows the following comment by the trial judge (N. T. 12):

"* * * in 145 F.2d Judge Hand said that he had no doubt that this man was guilty of the New Mexico offense, but Mr. Alberts was smart enough to get him off; that he had no doubt that he was guilty of the fraud. And Judge Hand is a very learned judge."

The opinion of Judge Hand in United States v. Cohen, 2 Cir., 1944, 145 F.2d 82, at page 95, certiorari denied 1945, 323 U.S. 799, 65 S.Ct. 553, 89 L.Ed. 637, reads as follows:

"He complains of the admission against him of the opinion of the Tenth Circuit in Rosenberg v. United States, 120 F. 2d 935, in which it reversed a conviction against him in another case, this reversal resulting in the dismissal of the indictment. He could not have more deliberately invited the admission of this opinion than by volunteering the state-

ment which he made upon the stand that, although he had been convicted, the judgment was reversed and the indictment dismissed. His purpose was obviously to give the jury to understand that he was cleared of any part in the fraud that was there involved, and that was a totally false purpose. He was not cleared at all; the indictment was dismissed only because the prosecution failed to prove the mailing of the 'count letter,' as the prosecution has failed here."

31. The trial judge has carefully considered all the references to the record at pages 8 and 9 of defendant's Reply Brief. At N. T. 592-3, the trial judge made clear on the record that he had never, directly or indirectly, indicated to the assignment judge a desire to try this case. The trial judge has the duty to assist in the expeditious conduct of the trial and his questions at N. T. 11, 26, 65-6, and 96-8 were within the scope of this function. In referring to the "past history of the case" at N. T. 463, the trial judge was referring to the divergent views which have been taken by different counsel at different times in this case. See opinion of November 23, 1956 (at pages 557-559 of 146 F.Supp.).

32. See, particularly, language of Judge Madden and quotation of Mr. Justice Frankfurter and Judge Frank at pages 89-90 of 120 F.Supp.

█ There was sufficient evidence to support the jury's verdict, as explained in the opinion of November 23, 1956.

### Order

And Now, January 3, 1958, It Is Ordered that defendant's Motion for New Trial and for the Entry of Judgment of Acquittal and defendant's motion for judgment of acquittal made during the trial, held October 1–7, 1957, are Denied.

### Annex A.

Alexander Osinoff, Esq. appeared for the defendant at the time of his arraignment on November 28, 1955.

On May 14, 1956, Stanley B. Singer, Esq. formally filed his written appearance for the defendant and the following documents in the Clerk's file, following that Entry of Appearance until the first day of the trial commencing October 1, 1957, bear his signature:

| Clerk's Document No. | Date Filed | Title of Document |
|---|---|---|
| 5 | 5/14/56 | Motion for Leave to Take Depositions Under Rule 15, Federal Rules of Criminal Procedure, 18 U.S.C.A. |
| 8 | 5/24/56 | Petition for Disclosure of Matter Occurring Before Grand Jury Under Rule 6(e) of the Federal Rules of Criminal Procedure and/or Discovery and Inspection Under Rule 16 of the Federal Rules of Criminal Procedure |
| 12 | 6/18/56 | Motion for Judgment of Acquittal or Motion for New Trial |
| 24 | 11/ 5/56 | Affidavit |
| 32 | 12/ 3/56 | Motion (signed jointly with Anthony J. Albert, Esq.) |
| 33 | 12/ 3/56 | Notice of Appeal |
| 36 | 1/21/57 | Supplemental Motion (signed jointly with Anthony J. Albert, Esq.) |
| 40 | 2/14/57 | Notice of Appeal |
| 42 | 3/27/57 | Petition to Vacate or Moderate Sentence |
| 45 | 8/30/57 | Motion for the Return of Seized Property and the Suppression of Evidence (signed jointly with Edward M. Dangel and Leo E. Sherry, Esqs.) |
| 46 | 8/30/57 | Motion for Inspection and Examination and Inspection of Statements Made By Certain Government Witnesses to the Federal Bureau of Investigation (signed jointly with Edward M. Dangel, Esq. and Leo E. Sherry, Esq.) |
| 47 | 8/30/57 | Motion for Inspection and Examination of the Testimony of Certain Government Witnesses Before the Grand Jury (signed jointly with Edward M. Dangel, Esq. and Leo E. Sherry, Esq.) |
| 48 | 8/30/57 | Motion for Continuance |

There have also been added to the Clerk's file the following two documents containing authorities, signed by Mr. Singer alone and filed with this court on behalf of the defendant:[a]

(1) 2-page letter of May 28, 1956, containing numerous authorities in support of defendant's Motion For Leave To Take Depositions Under Rule 15, Federal Rules of Criminal Procedure.

(2) Defendant's Brief in Support of Motion For Judgment of Acquittal or Motion for New Trial, filed 9/14/56.

Mr. Singer was present, and participated in the questioning, at the deposition taken in the District of Columbia on May 17, 1956,[b] as a result of an order entered granting the Motion referred to above as Document No. 5. He argued the Motion referred to as Document No. 8 at length on behalf of the defendant, presenting authorities in support of defendant's position.[c] He participated actively in the preparation for the first trial [d] and was associated actively with Mr. Osinoff in the defense of defendant throughout the first trial in June 1956. He was present at, and participated in, the argument on defendant's motion for judgment of acquittal and for a new trial on October 5, 1956 (Document No. 22).

Anthony J. Albert, Esq., of Santa Fe, New Mexico, entered his appearance for defendant on October 8, 1956 (Document No. 18). Thereafter, Mr. Singer signed the documents filed on behalf of defendant either alone or jointly with Mr. Albert until August 30, 1957.

On August 30, 1957, the four motions filed contained the signatures of Edward M. Dangel and Leo E. Sherry, as well as that of Mr. Singer, and there is no record of any entry of appearance of either Mr. Dangel or Mr. Sherry ever having been filed in this court.[e]

---

a. It is understood that Mr. Singer's name appears, along with that of other counsel for the defendant, on all the briefs filed in the United States Court of Appeals for the Third Circuit in support of the appeal argued in June 1957.

b. See Document No. 6 in Clerk's file.

c. See last sentence of footnote 2 to Order of 5/31/56.

d. See Mr. Singer's affidavit of 11/5/56 (Document No. 24).

e. On November 22, 1957, there was filed in this court a withdrawal of appearances of Messrs. Dangel and Sherry on stationery headed "Dangel & Sherry, Eleven Pemberton Square, Boston" (Document No. 6). A copy of this letter was sent directly to the undersigned's chambers. This copy, together with a copy of the undersigned's letter sent to both counsel, are attached to this Memorandum Opinion as Annex C. No explanation has ever been offered by defendant of this withdrawal of Mr. Dangel's appearance, which was, in fact, never entered.